ALEJANDRO SARLI V. THE STATE.

No. 4174.   Decided October 25, 1916.

**1.—Murder—Charge of Court—Principal—Accomplice—Confessions.**

Where, upon trial of an accomplice to murder, the court's charge required the jury to receive and consider testimony as to the declarations of the principal made a day after the homicide, as proof of the guilt of the defendant, and permitted the jury to find defendant guilty if they believed such declarations were corroborated, and did not confine such declarations or confessions of the principal to the sole purpose of establishing his guilt, the same was reversible error.

**2.—Same—Acts and Declarations of Principals—Corroboration—Charge of Court.**

Where, upon trial of murder of an accomplice, the court permitted in evidence the acts and declarations of the principal, who had since died, made a day after the homicide, the same could only be used to show the guilt of the principal, and could not be used against the defendant for any purpose, as the conspiracy, if any, was at an end when such declarations were made, and the principal being dead, and not a witness upon the trial of the defendant, the rule of corroboration could not apply, and the court was in error in so charging the jury.

**3.—Same—Independent Motive—Charge of Court—Conspiracy.**

Where the evidence raised the issue that the principal killed the deceased upon an independent motive, not embraced in the original conspiracy, the accomplice, who was charged as such for the murder of the deceased, could not be convicted of that offense, and the court should have submitted this issue in a proper charge to the jury.

**4.—Same—Evidence—Letter—Secondary Evidence Not Admissible, When.**

Where, upon trial of murder of defendant as an accomplice, the State in attempting to show motive, introduced the contents of a letter, addressed to the woman about whom the difficulty was supposed to have originated, and defendant objected thereto because the letter was not shown to have been written or caused to have been written by the defendant, such objection should have been sustained.

**5.—Same—Argument of Counsel—Practice on Appeal.**

Where, upon trial of murder of defendant as an accomplice, the private prosecutor, in his closing argument for the State, discussed certain testimony which had been excluded by the court, and which was injurious to the defendant, the same was reversible error, and prosecuting attorneys are again cautioned to keep within the record in their argument.

Appeal from the District Court of La Salle. Tried below before the Hon. J. F. Mullally.

Appeal from a conviction as an accomplice to murder; penalty, fifty years imprisonment in the penitentiary.

The opinion states the case.

*J. Albert Strawn,* for appellant.—On question of accomplice testimony: Crook v. State, 27 Texas Crim. App., 198; Poston v. State, 12 id., 408; Simms v. State, 10 id., 131; Arnold v. State, 9 id., 435.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of declarations of principal after commission of offense: Phelps v. State, 15 Texas Crim. App., 45; Wearthersby v. State, 29 id., 278; Eggleston v. State, 59 Texas Crim. Rep., 542.

DAVIDSON, JUDGE.—Appellant was convicted as an accomplice to murder, his punishment being assessed at fifty years confinement in the penitentiary.

The indictment charges that Porfirio Tores was principal in the murder of Ike Hill, and that appellant was his accomplice. Tores was convicted, awarded the death penalty, and hanged something like a year prior to the trial of appellant. In order to convict appellant as the accomplice the evidence must show that Tores was guilty, and that appellant advised, urged, commanded or furnished the means to Tores with which to kill Hill. The evidence shows that appellant and Hill were personal friends, so far as the record shows, to the time of the killing. On the day of and preceding the killing at night the State's theory is, that appellant bought four rifle cartridges. After the killing Tores was found in possession of three shells and one hull corresponding in size with those the witness says appellant bought. Another witness testifies that subsequent to the above alleged purchase Tores borrowed 25 cents from appellant. The State's theory is that Tores with this money purchased the same character of shells. It is further in evidence that appellant, after the purchase of the shells, left that neighborhood for the town of Tilden, in McMullen County, and was not at nor about the place of the killing at the time it occurred. The evidence discloses that he stated upon leaving Fowlerton, where the homicide occurred, that he was going to the Berry ranch in McMullen County to meet Mr. Holland, sheriff of that county, with reference to the arrest of a Mexican named Garcia under a charge of murder. The State also introduced evidence to the effect that a Mexican girl, supposed to have been intimate with and engaged to Hill, received a letter, which she says she opened and read one line, which requested her to be the writer's sweetheart. It was written with a lead pencil. She did not know who wrote the letter, and did not know the handwriting of appellant. Subsequently and before the homicide appellant was at her house and she handed him the letter, which he

tore up and threw away. The deceased, Hill, was about the premises at that time. Hill was intimate with the girl and was engaged to be married to her; in fact, the inference is that she was his mistress. The State's contention is that appellant wanted to secure her affections. The State introduced statements of Tores made after the homicide. He was hanged about a year before this, therefore could not and did not testify. These statements were made subsequent to the homicide. These will be noticed in taking up the bills of exception, charges of the court, and other matters.

Appellant's contention was that he had nothing to do with nor advised the killing. Among other things it was proved at the time . of the homicide that Hill was at the house where the girl lived; had come to see her to get some washing. The girl had been advised by appellant that Hill would be there that night, the night of the killing, to get his washing, which appellant had carried to her house at the request of Hill prior to the killing. Hill came, and Tores, the principal, was present. The girl asked Hill to make Tores leave the place on account of some misbehavior on his part she did not relish. Hill asked him what he was doing there and what he meant, then turned to walk away, remarking to Tores he would be back in five minutes, or words to that effect. Tores then remarked to him, "If you are going to kill me I will kill you first," and immediately shot Hill. Tores left and went some miles away to a camp of two other Mexicans. They inquired why he was riding around that time of night. He replied he had shot a Gringo; that the Gringoes were chasing him. He did not seem to know whether he had killed Hill or not, or the Gringo, as he called him. Statements from Tores are also to the effect that appellant told him to kill the first Gringo that came to his house on that ' night, and that Hill was the first one that arrived. The State's theory was that because appellant had notified the girl that Hill was coming to her house on Saturday night, that Hill was the man he had in contemplation when he, appellant, told Tores to kill the first Gringo that came. This is a sufficient statement of the case to review the questions presented.

There are exceptions to the charge given and requested charges refused. . The court charged the jury as follows: · "You are instructed that the acts and declarations of said Porfirio Tores in evidence (if any) in so far as they relate to the defendant, Alejandro Sarli, must be taken and considered as the acts and declarations of an accomplice. Now, you can not convict the defendant upon the testimony before you as to the acts and declarations of said Porfirio Tores alone, unless you first believe that such testimony and such declarations are true, and connect the defendant with the offense charged, and then you can not convict the defendant upon said testimony and declarations, unless you further believe that there is other testimony in the case, corroborative of the testimony as to such acts and declarations of Porfirio Tores, tending to connect the defendant with the offense charged; and the

corroboration is not sufficient if it merely shows the commission of the offense charged."

Appellant objected to the above charge, first, because the jury is permitted and required to receive and consider the testimony as to the declarations and acts of Porfirio Tores in evidence as proof of the guilt of the defendant, and permits the jury to find the defendant guilty if the jury believe the testimony as to such acts and declarations of Porfirio Tores is corroborated by other testimony tending to connect defendant with the offense charged, and for the reason that said portion of the charge permits the jury to consider testimony as to the acts and declarations and confession of Porfirio Tores, made after the commission of the offense charged and before the commission of the offense, as evidence of the guilt of the defendant, when no conspiracy whatever has been proven by the State to have been entered into between defendant and Porfirio Tores to kill Ike Hill and after the offense had been committed, even if a conspiracy is proved; and for the further reason that said language is contradictory to the fundamental law of the case, towit: that the acts and declarations of the principal, or his confession, can be proved and considered on the trial of the accomplice for the sole and only purpose of establishing the guilt of the principal, and, in the case at bar, for the sole purpose of proving that the principal, Tores, committed the offense charged against Tores, that is, the murder; and further objects to another charge because it fails to present to the jury any theory raised by the evidence except that of defendant's guilt or innocence, presented affirmatively, based upon the indictment, for the reason it is shown by the uncontradicted evidence that the deceased was the first to approach the alleged slayer, and made certain threats which, considering the evidence, drawn from State's witnesses, that Porfirio Tores, alleged principal, was commonly regarded as being of unsound mind, might easily have been concluded by the jury to have been an independent cause of the killing and considered and acted upon as a provocation, by Porfirio Tores, at the time it is alleged he killed the deceased, and which testimony could easily preclude the guilt of the defendant and account for the killing of deceased; and for the reason said main charge fails to properly limit the purpose for which testimony as to acts and declarations of Porfirio Tores was introduced and could be considered.

Outside of the charge above quoted the only other portion of the charge on this phase of the case was the general submission to the jury of the proposition that if Tores killed Hill and appellant advised him, etc., prior to the killing, that appellant could be convicted. There were two propositions in this case the State was compelled to meet and prove: First, that Tores did the killing, and, second, that appellant advised or furnished him the means prior to the homicide for that purpose. The indictment precludes the conviction of appellant as a principal, or any other connection with the offense except that of an

accomplice. It is not sought to show his presence; and in fact the State in order to prove its case had necessarily to show that appellant did not participate in the killing, and it had further necessarily to show that appellant advised Tores to kill deceased before the killing. It is the law of Texas, both statute and opinion, that the guilt of the principal must be shown or there can be no accomplice. There can be no accomplice to an offense, or a principal in an offense unless the principal commits the offense about which he was advised or commanded to commit. The acts and declarations of the principal are admissible to prove his guilt. His acts and declarations may or may not become evidence against the accomplice on the trial of the accomplice. The acts and declarations of a co-conspirator, if an accomplice, can be so classed with the principal, or the alleged principal, made by either in furtherance of the common design, may be admissible evidence on the main case, but in order to admit this character of testimony it must in some way show or tend to show the criminal relation between the principal and the accomplice. All of this character of testimony must occur before the completion of the conspiracy or end of the conspiracy. In this case if appellant was guilty as accomplice to the principal, Tores, it was by reason of facts, circumstances or acts connecting the accomplice with the principal prior to the killing. There was nothing in contemplation, so far as this record goes to show, to be done by the parties after the killing. They were not shown to have acted together afterwards, and in fact the State's testimony excludes that idea. We think, therefore, that the charge of the court was error. The charge should have been as contended by appellant, to the effect that these acts and declarations of Tores should have been limited to proof of his guilt, and the jury further instructed how and for what purpose they could consider his acts and declarations. Acts and declarations of one co-conspirator made in furtherance of the common design and prior to the consummation of it, might be used against either or both as original evidence, but the jury in their consideration of the case should be carefully guarded as to the effect and purpose of these statements. This charge nowhere undertakes to do this, but the court simply gave the charge above specified, that the acts and declarations of Tores could be considered as evidence against appellant and that Tores could be the accomplice. All the acts and declarations made subsequent to the homicide could not be used against appellant for any purpose. Criminative statements made by Tores might be used against him because he made the statements and declarations, but those made after the consummation of the agreement, if there was one, could not be used against appellant, for the whole end and scope of this conspiracy, or the advising of Tores by appellant, if such thing occurred, was terminated in the killing under this record. All of the acts and declarations, and there were several introduced in evidence, made by Tores after the killing, that in any way involved or referred to defendant, should have been limited to the jury for their consid-

eration alone as to Tores in proving his guilt. Such declarations could not be used to connect appellant with the offense. Therefore, the court in charging that Tores was an accomplice assumed the very crucial point in the case against defendant. Tores was not a witness, therefore the rule of corroborative evidence applicable to accomplice witness could not apply and the court was in error in so charging. If the State has a case on the facts at all it is very weak. The court did not stop there, but emphasized the error, as we understand, when he instructed the jury that these acts and declarations of Tores, whom he charged was an accomplice to the defendant, must be corroborated. So far as the defendant is concerned, those acts and declarations were purely hearsay and could not be corroborated so as to affect the defendant. They were declarations of Tores made after the consummation of the act, at the termination of the design and purpose of the conspiracy, if it be a conspiracy, or the advising by appellant to Tores to kill, made out of the presence of appellant and because Tores was not a witness. Tores by making these statements could not corroborate himself even if he had been a witness, but he was not a witness, and whatever of the acts and declarations of Tores were introduced before the jury was necessarily on the theory that he killed Hill at the instigation of appellant. This could not be used as testimony where the statements were made after the consummation of the design, and the jury should have been so told plainly, but instead the court in this charge instructed the jury that the acts and declarations of Tores could be treated as evidence against appellant, and not only that, but these acts and declarations should be corroborated in some manner tending to connect the defendant with the crime. This was hearsay testimony, could not be used to connect appellant with the crime, and could not be corroborated because illegitimate testimony and inadmissible, and not only so, but they were declarations of Tores made after he had killed Hill, in the absence of defendant and were not subject to corroboration. If the case should be tried again it should be upon the theory that such acts and declarations of Tores admitted in evidence should only be those anterior to the killing and in furtherance of the common design if used to affect appellant. If they can not be connected in this way, all the acts and declarations of Tores would be inadmissible, except to prove his own guilt. They could not be used to prove the guilt of defendant, and all acts subsequent to the killing of Hill and statements of Tores in regard to that matter should be excluded from the jury, except where they tend to show the guilt of Tores in killing Hill, and the court's charge should properly so limit the testimony.

There is another question raised, a charge asked and refused to this effect: That if Tores killed Hill because he believed Hill was going after a weapon and would return in five minutes and kill him, and that if for this reason Tores killed Hill, the jury should acquit appellant. We believe the charge embodying this idea should have been

given the jury. The State's theory was that appellant did advise Tores to kill Hill. If while he was at the house the girl asked Hill to make Tores leave and Hill started off after a gun to come back, and Tores believed he was going to kill him, and for that reason he killed Hill, appellant could not be convicted, provided this was the sole reason for which the killing occurred. This was directly antagonistic to the theory that appellant was an accomplice, and the jury would have to believe he was an accomplice in order to convict. If he killed Hill for a different reason and because he thought Hill was going to kill him or do him some injury, then the killing of Hill would not be under the command or advice or by means furnished by appellant. This charge should have been given, or this idea in some way presented to the jury.

The following charge was requested by appellant, which we think should have been given: "You are instructed not to take into consideration the testimony of Valentin Herrera and Polito Vasquez as to the declarations and acts of Porfirio Tores, made at the Fleming-Holmes store in Fowlerton on the day after the alleged killing of Ike Hill and the Sunday after at the camp of Polito Vasquez, for any other purpose than to establish the guilt of Porfirio Torres and can not be considered as proof of any guilt of the defendant, Alejandro Sarli, as charged in the indictment." This charge should have been given, but was refused. A bill of exceptions recites that while Vasquez was testifying he said: "I saw Porfirio Tores on the night of the 26th of October, 1913. He came to my camp. He arrived there at the hours of night with a gun in his hand; then he saluted me, and I asked him what he was doing so late at night, and then he told me he came running away because the Gringoes were after him because he had scared or killed a white boy there in town; he did not know whether he was dead or alive; that when he shot at him he fell to the ground. Then I asked him what had been the question for him, Tores, to shoot at him, and he, Tores, told me that when he worked for a man he did as they ordered him; that Alejandro Sarli had gone to Tilden the day before and he, Alejandro Sarli, had left orders with him, Tores, that the first Gringo that came to the house to use his gun on him, and that he was the first one to arrive and he was the one he used the gun on." Various objections are urged to the admission of this testimony, especially that part of it as to what defendant did or told Tores to do, for the reason it is hearsay and not binding on defendant, and for the reason it is not shown defendant was present at the time or had any connection with the conversation between witness and Tores, and it is immaterial and irrelevant. This testimony was not admissible against appellant. It was hearsay altogether as to appellant. He was absent, and the statement of Tores shows he was absent; not only so, but was absent from the scene of the killing and had gone to Tilden. This statement of Tores would tend to show, had it been legitimate testimony, that he had been by appellant advised or commanded to shoot the first Gringo that came to the house, and that this boy Hill was

the first one to arrive, therefore he killed him. This was after the killing, which occurred Saturday night, early in the night, and this was on the night of the following day. The killing occurred on the 25th day of October, and this conversation occurred at night on the 26th day of October. That portion of this testimony that was admissible against Tores shows that he was a principal and should have been limited exclusively to that purpose and for that reason. It was very damaging testimony and should not have been permitted to be weighed by the jury for the purpose of connecting the defendant with the transaction.

Another bill recites that the girl, whose name was Panchita Quintanilla, while testifying, over objection of appellant, was permitted to state: "I was engaged to Ike Hill about a year before his death and we were to get married, and I also knew Alejandro Sarli. We were friends. Alejandro Sarli sent word to me, but I don't know, sending asking if I wanted to be his sweetheart." The letter introduced in connection with this girl's testimony is set out in bill of exceptions No. 14. She received this letter through the postoffice. It was written in pencil. She had never seen appellant's writing and did not know his handwriting and did not recall when she received the letter. She did not read the letter very well, only part that he said, "If I had love for him, and I just took it and put it up. I gave it to Alejandro one day at my house, while he was on the gallery. He took it and tore it up. I saw him. I just read two or three words, I did not notice very well. He did not open the letter when I gave it to him. He did not look at it. I don't know when the letter was dated. I gave him the letter and said I did not have any use for it. He never said a word. At the time I gave Sarli the letter Ike Hill, the deceased, was at my house." This was objected to on various grounds: It was not shown that defendant had written the letter; that she did not know the handwriting of defendant and was not qualified to testify that the letter was written by defendant, and for the reason that witness did not notice particularly what was in the letter. These objections were ovverruled. This letter under this bill of exceptions should not have been admitted. There was no sufficient evidence to show that appellant had written the letter. We are led to believe this letter was introduced on the theory that appellant was trying to win the affection of the girl, and that Hill was already in love with her, and their relations were such that she discouraged Sarli. The State offered this, it is supposed, on the theory that this may have been some inducement to have Hill killed. If it was not offered for this purpose, it would be difficult to imagine for what purpose it was offered, but unless the letter was proved up in some way so as to show appellant wrote or authorized the writing of the letter, it would not be admissible. The predicate was not sufficiently laid.

There are some speeches of the prosecuting officers set out that ought not to be indulged and will be carefully avoided upon another trial.

Another bill in this connection will be noticed. Mr. Humphries testified that the defendant, on the day of the homicide, told him, witness, that he was going to the Berry ranch, where he had an appointment with Will Holland, sheriff of McMullen County, to look for a Mexican who was wanted upon charges of murder, and further, that a day or so after the homicide that witness met Sheriff Will Holland and received an official communication from him, without stating what it was, and that a man was dispatched to Fowlerton and a wire sent to Tilden. The court excluded this testimony on objection of the appellant, but private prosecutor, Hon. Frank H. Burmeister, during the course of his closing argument for the State, made the following observation: "The State contending that the statement testified to by the witness Humphries, as made by defendant, that he had an appointment with the sheriff of McMullen County, being untrue and a ruse to call the attention of the officer, Humphries, to the fact that defendant was out of town, knowing a crime was to be committed. I can presume that when Mr. Humphries met Mr. Will Holland, sheriff of McMullen County, who did not testify in this case and asked him and told him what Sarli (defendant) had said, that he could presume that Mr. Holland said: 'I have not seen that fellow, I don't know anything about him.'" Objection was urged to this, among other things, that it was bringing testimony before the jury in an indirect way that was excluded by the court. This was error on the part of counsel and should not have been permitted by the court. This was getting in through the mouth of the prosecuting officer what had been excluded by the court, or what was supposed to have been what Mr. Holland would have stated. This was never testified before the jury, and it was made as a presumption on the part of the attorney that these things did occur. If that had been before the jury through the mouth of the witness Holland it would have doubtless been injurious, but Mr. Holland was dead and did not testify in the case, and the attorney is not permitted or authorized to make the statement that Holland would supposedly have testified had he been present.

The remaining bills of exception with reference to arguments are not discussed and are not further noticed than by cautioning prosecuting attorneys to keep within the record.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*