HENRY PRUITT v. THE STATE.

No. 6563.   Decided January 25, 1922.

·Rehearing Denied March 1, 1922.

1.—Robbery—Insanity—Evidence—Co-Defendant.

While there might arise some state of facts wherein the insanity of the principal actor might be provable, not as a defense *per se*, but as lending ·color to some theory of defense, yet in the instant case where the record

showed an utter failure to support the proposition of such principal actor's insanity, there was no error in excluding the proffered testimony that said principal actor was insane at the time of the alleged robbery.

### 2.—Same—Charge of Court—Principals—Keeping Watch.

Where in the general definition of principals, the court included one who not being actually present kept watch, etc., but in applying the law to the facts, the jury were told that if defendant's companion committed the robbery, then among other things which would render defendant guilty, would be, that he was present and kept watch while his companion committed said offense, etc., there was no reversible error, under the facts of the instant case.

### 3.—Same—Rule Stated—Abstract Charge—Practice on Appeal.

In determining whether the erroneous abstract instruction would necessitate a reversal, the whole case must be looked to in order to determine whether the error was of such a character as would have been calculated to mislead the jury, and where this was not the case in the instant case, there was no reversible error.

### 4.—Same—Rehearing—Insanity—Co-Principal—Practice on Appeal.

By all precedent, the burden of proving insanity rests upon the accused, and in re-examining the record in the instant case, this court is of the opinion that the excluded testimony with reference to the insanity of the co-principal and principal actor is totally insufficient to show such insanity, and could not have induced the jury to find that such co-principal was insane at the time of the commission of the offense, and would not have produced a different result.

Appeal from the Criminal District Court of Bowie. Tried below before the Honorable P. A. Turner.

Appeal from a conviction of robbery by firearms; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Lincoln & Smitha,* for appellant.—Cited cases in opinion.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, Judge.—Conviction is for robbery by the use of firearms, with punishment assessed at five years confinement in the penitentiary.

On the day of the alleged robbery appellant and one Henry Alford in an automobile drove up to the bank in the town of Nash in Bowie County; the car was stopped just at the edge of the sidewalk immediately in front of the bank. Alford was driving at this time. He went into the bank and held up the cashier with a pistol, securing $299. Appellant remained in the car, stooped over, looking in the bank while Alford was engaged in getting the money. The engine of the car was kept running; as Alford returned to the car appellant moved over to the driver's seat and as soon as Alford entered and

before he was seated the car suddenly started and rapidly moved away. After being driven a short distance from the place of the robbery the car was overturned and appellant and Alford from that point proceeded on foot. They were arrested about an hour and a half after the commission of the offense, both of them at the time of the arrest being considerably under the influence of liquor. Two hundred and eighty-nine dollars of the money was recovered from Alford, who also had in his possession some whisky. None of the property was found in appellant's possession.

It appears from the record that Alford had already been tried, convicted and sent to the penitentiary. Upon his trial he interposed a plea of insanity, and introduced evidence supporting that issue, which the jury determined against him. Upon the trial of appellant his attorney offered evidence for the purpose of showing that Alford was insane, upon the theory that if Alford was insane, and being the man who actually committed the robbery, he was not subject to punishment, and therefore, appellant would not be guilty of any offense. The State objected to the evidence upon the ground that it was immaterial in the trial of appellant as to what the condition of Alford's mind was, because appellant would be equally guilty if Alford were crazy as if he were sane, if appellant was present, had knowledge of and participated in the robbery; and upon the further ground that there had been a trial of Alford in which the jury found that he was sane, and he had been convicted and sent to the penitentiary; and further, upon the ground that it was permissible only to prove the condition of appellant's mind and his condition at the time of his participation in the robbery, and the condition of Alford's mind would be immaterial so far as appellant's acts were concerned.

The evidence offered raised the issue as to the sanity of Alford at the time of the commission of the crime. The judgment of conviction against him was not introduced, and his acts incident to the robbery were developed as part of the transaction showing appellant's alleged connection therewith. Appellant's contention is that if the offered evidence had been admitted it would have called for a charge to the effect that if Alford was insane at the time of the alleged robbery he could not be convicted of any offense, and if the jury so found, then appellant should be acquitted. In support of this proposition we are cited to the following cases. In Condron v. State, 62 Texas Crim. Rep. 485, and Pizana v. State, 81 Texas Crim. Rep., 81, 193 S. W. Rep. 671, the defendants were on trial charged with murder: The defense interposed was that others than they had actually committed the killing and in doing so were acting in self-defense, and this being true they could not be guilty of any offense whatever. We find no objection to this principle of law, because if the killing was in self-defense no offense whatever was committed, and an alleged co-principal being present at the time of the homicide

could not be guilty unless the party doing the actual killing had committed an offense. In Red v. State, 39 Texas Crim. Rep. 667, the question under discussion was whether co-principals could be guilty of different degrees of homicide. In Sarli v. State, 80 Texas Crim. Rep., 161, 189 S. W. Rep., 149, and Tuttle v. State, 49 S. W. Rep. 82, the defendants were upon trial as accomplices, one to the offense of murder, the other to the offense of swindling. It is apparent that under our statute one charged as an accomplice can not be guilty unless his principal is first shown to be guilty.

We have been unable to make application of the principle contended for by appellant to the facts of the case now under consideration. If Alford was insane and appellant knew this and procured him to commit a robbery, appellant would be guilty as a principal even though absent under Article 77 P. C. If Alford was insane and appellant agreed with him to commit a robbery and was present giving aid in the unlawful enterprise, even though Alford might not be subject to punishment, yet the offense of robbery was none the less committed, and appellant would be guilty and could be convicted therefor, although Alford might not. If appellant agreed with Alford to commit a robbery, believing him sane at the time, and was present at the time the robbery was committed, and aided him in the commission, appellant could be punished therefor, although it afterwards transpired that Alford was insane and not subject to punishment. We believe the court committed no error in excluding the offered testimony.

Many objections are urged to the court's charge on principals only one of which we will discuss. In the general definition of principals the court included one who, not being actually present, kept watch so as to prevent the interruption of one engaged in committing the offense. However, when he applied the law to the facts the jury were told that if Alford committed the robbery, then, among other things which would render appellant guilty would be, that "he was present and kept watch" while Alford committed said offense so as to prevent the interruption of said Alford. If we understand appellant's objection, it is of a two-fold character; one being that the statute (Art. 75 P. C.), defines a principal among others, as one who, not being actually present, keeps watch so as to prevent the interruption of those engaged in committing the offense, and therefore the court was without warrant in telling the jury that if appellant was present and kept watch so as to prevent the interruption of Alford he would be guilty as a principal. Technically considered the objection might at first blush appear to have some merit, but when considered in the light of the facts developed on the trial we do not consider it of such amount as would call for a reversal of the case. If appellant was present at the robbery and was keeping watch in order to prevent the interruption of Alford, there can be no doubt but that to this extent appellant was aiding Alford and we are unable

to see how the charge, as framed, could have operated to his injury. The second objection urged is that the court ought not to have embraced in his general definition of a "principal" one who was not actually present at the time of the commission of the offense, but was keeeping watch so as to prevent the interruption of its commission. He urges that the facts show appellant was present, and cites many authorities in support of that proposition. We agree with his contention that under the facts appellant was present. The evidence shows that it was only a few feet from where the car was standing at the edge of the sidewalk to the cashier's window in the bank, and that appellant was in plain view thereof from his position in the car. He was present in the sense that he could see what was going on and was near enough to have interposed in behalf of Alford to aid him in carrying out his unlawful purpose if an interruption of any kind had arisen. The sole question then remains: Would the fact that the trial court embraced in the abstract definition of a principal one "who was not actually present but was keeping watch" be such material error as would call for a reversal of the judgment? We are cited to Conn v. State, 11 Texas Crim. App. 396; Bird v. State, 48 Texas Crim. Rep. 188, and Tittle v. State, 35 Texas Crim. Rep. 96, in all of which an error was committed by the court in embracing an abstract definition of a principal not supported by the evidence. None of these cases were reversed because of such error alone. In Burges v. State, 33 Texas Crim. Rep. 9, the court embraced in his charge on principals one who kept watch, when the evidence did not make same applicable, but omitted it in the remainder of the charge. It was held harmless error.

In determining whether the erroneous abstract instruction would necessitate a reversal the whole case must be looked to in order to determine whether the error was of such a character as would have been calculated to mislead the jury. The court at no time after the misstatement complained of in his general definition ever referred to appellant as not being present, but all of his charge thereafter treats him as though present. In what way could the mistake of embracing an "absent principal" in the general definition have influenced the jury to the hurt of appellant? They knew from all the facts before them that appellant was present in the car at the time Alford was perpetrating the act of robbery, and knew from the evidence the conduct of appellant while sitting in the car; watching Alford while in the bank, slipping over to the driver's seat, starting the car suddenly and rapidly upon Alford's return. We have been unable to conceive how this erroneous statement by the trial judge could have in any way worked to the harm of appellant.

The other errors complained of have been examined and we regard them as without merit.

Finding no such error in the record as would call for a reversal of the judgment, the same is affirmed.

*Affirmed.*

March 1, 1922.

LATTIMORE, Judge.—In his motion for rehearing appellant stresses only the contention that the lower court erred in rejecting certain testimony offered by appellant for the purpose of showing the mental condition of Henry Alford, alleged co-principal with appellant. The facts surrounding the alleged robbery are stated in our opinion. A review of the record in this case, including the testimony of appellant himself, discloses that there is no question raised but that Henry Alford went into a bank at Nash, Texas, on the occasion charged, presented a pistol, told an officer of the bank to "stick 'em up," and to "shove it out here," and that he backed up his demand for money with a threat to blow out the brains of the banker, and that upon being handed $299 in currency he went out to a car at the curb in front of the bank building, in which appellant was, and that said car drove rapidly away. Appellant admits his presence but denies knowing what Alford's purpose was in going into the bank, or that he knew what Alford was doing while in there, or any knowledge of the fact that Alford had gotten any money, and he further denies that he drove the car away from the bank, or was in any other way concerned in the robbery. At the time of appellant's trial it appears from matters stated in his bill of exceptions No. 1, that Alford had been already tried and convicted and was then serving his sentence for said robbery; also that on his trial Alford pleaded insanity. The same testimony introduced on Alford's trial and in his behalf, was that offered by appellant on this trial and the rejection of which is made the basis of this complaint. We hold in our original opinion that such evidence would be of no moment in determining appellant's guilt under the facts of this case, and that consequently no error was committed in rejecting it. In his motion for rehearing appellant contends that we did not apprehend his purpose in offering said testimony, but that we disposed of the matter in a way neither apt nor sound. Examining said bill of exceptions No. 1 in the light of appellant's contention as made in this motion, we observe that the statement of his exception to the action of the court in rejecting this testimony, by the attorney for appellant, occupies about two pages of the record and consists largely of a narration of facts connected with Alford's trial and of the proposed testimony of the witnesses, and of appellant's theory of his defense, said statement of exception concluding as follows:

"Now, the testimony of these witnesses is offered in corroboration of this defendant that he did not know what Alford was doing, and Alford himself didn't know what he was doing, but it was an insane act on the part of Alford himself; and the testimony having further shown that this defendant was in nowise aware or prepared for any such transaction as was staged there at the bank."

It is now ably and ingeniously argued by counsel for appellant that in a case such as the one before us, where the conclusion of guilt of the accused rests upon the presence of the accused with Alford at the time of the robbery, and what was done by the two parties at said time, which fact must be looked to, to establish the acting together of Alford and appellant; that it is going too far to say that the insanity of the chief actor,—the man who went into the bank and presented the pistol and secured the money,—is immaterial. It is insisted that if Alford can be shown to be insane, that this would lend color to the claim of appellant that Alford had not told him of any crime, and that not knowing of any criminal purpose on the part of Alford, would also shed a different light upon appellant's action in the car while Alford was in the bank. To state it otherwise, appellant claims that if Alford by reason of insanity, was incapable of forming and entertaining a criminal intent, there would seem less reason for concluding that he had engaged this appellant in a conspiracy to rob the bank on the occasion charged. There seems force in the contention. Our disposition of the matter in the opinion was from what we conceived to be appellant's contention. Analyzing the evidence rejected by the court, in the light of the construction now urged by appellant, we have concluded that there might arise some state of facts wherein the insanity of the principal actor might be provable, not as a defense per se but as lending color to some theory of the defense. We do not think, however, that the instant case can by any fair reasoning be said to be embraced in such hypothetical class of cases because of its utter failure to support the proposition of Alford's insanity. We have carefully examined the proposed testimony of said witnesses, as given upon the trial of Alford and as proposed would be given by them on this trial if permitted, and which is copied in said bill of exceptions No. 1. From said testimony it appears that Alford had lost his wife some time before the alleged robbery and had deeply grieved, and had seemed to be a changed man, many little things being detailed by said witnesses evidencing peculiarities. No one of said witnesses expressed any opinion that Alford was insane, or that he did not know right from wrong, or that he did not know that it would be wrong to commit a robbery, or to take property not his own. No insane delusion was detailed. It was shown that Alford had been steadily employed, and that but for the fact that he had grieved for his wife and was much concerned about his child, and that he had imbibed large quantities of liquor, and some times took cocaine, there was nothing stated by any witness to indicate insanity. By all of our decisions the burden of proving insanity in a given case rests upon the accused seeking acquittal upon said ground, or benefit from such proof. Unless we could conclude from an examination of this testimony that it would have induced a belief on the part of a jury in some way that Alford was insane, it would be wrong on our part to reverse this case for the rejection of such testimony.

Appellant testified that he had met Alford on the day of the alleged robbery and drove around with him for an hour or two, both of them drinking liquor, and that they drove to the little town of Nash some few miles out from Texarkana. He said that Alford was driving the car and that he stopped the same in front of a bank building, but that he was so drunk at the time that he did not pay much attention, and that he did not know what Alford's purpose was in going into the bank, and that he positively did not drive the car away from the bank, or take any part whatever in what was there done. A number of witnesses testified for the State that when the car stopped in front of the bank and Alford got out, appellant slid over and took the wheel and kept the engine running, and that he was looking into the bank all the time that Alford was in there, and that when the latter reappeared (after having gotten the money) the car was started almost before Alford got on the running board, and that it drove rapidly off. Appellant did not undertake to testify that Alford appeared to him to be insane, or to any other acts on the part of Alford from which such conclusion would legitimately follow. We think a sound rule is that unless the rejected evidence had some probative force or might reasonably appear in some way likely to produce a different result, we should not hold its refusal error.

While only persuasive, we observe that the same facts had been submitted to the jury in Alford's case in which he had sought an acquittal on the ground of insanity, and they had found against him on that issue. We realize that appellant is not bound by such verdict.

Believing the case correctly decided in our original opinion, the motion for rehearing will be overruled.

*Overruled.*