(117 So. 204)

**BOWEN v. STATE.**    (5 Div. 993.)

Supreme Court of Alabama.    May 24, 1928.

**1. Criminal law ⬷451(3)—Witness' statement in murder prosecution that deceased appeared to him to be dead was not objectionable as being conclusion, but it was shorthand rendering of facts.**

In murder prosecution witness' statement that deceased appeared to him to be dead was not objectionable as being mere conclusion, an opinion of witness, invasive of province of jury, but it was shorthand rendering of facts.

**2. Criminal law ⬷466—Objection to question to witness testifying deceased was intoxicated, whether witness asked deceased to let witness drive on account of deceased's condition, held properly sustained.**

Where state's witness who had been with deceased prior to shooting and who testified that deceased was intoxicated and had been for some hours prior to·shooting, sustaining state's objection to question, in murder prosecution, whether at any time during trip witness had begged deceased to let witness take steering wheel on account of deceased's condition, *held* not error, since if not otherwise objectionable question was improper because it asked for witness' reason.

**3. Homicide ⬷157(3)—In murder prosecution evidence regarding magnitude of difficulty between defendant and deceased before killing held properly excluded.**

In murder prosecution, objection to question, "What was the extent or magnitude of that difficulty?" referring to altercation between defendant and deceased two or three hours before killing, *held* properly sustained, since, if defendant desired to show deceased had threatened defendant with knife, that fact should have been inquired about, as all that was admissible in circumstances of killing.

**4. Criminal law ⬷364(5)—Defendant's statement to witness in exculpation of killing after witness came on scene after walking 150 yards held properly excluded.**

In murder prosecution, defendant's statement to witness in exculpation of his act after witness came upon scene walking 150 yards, being attracted thereto by sounds of shots fired from an automatic pistol, was not of res gestæ and was properly excluded.

**5. Homicide ⬷174(1)—Defendant's proof regarding where he went after killing held properly excluded, state not attempting to prove flight.**

In prosecution for murder, proof as to where defendant went after killing. state ha⁊

ing made no effort to prove flight, *held* properly excluded.

**6. Witnesses ⟨⟩274(2)—Where defendant in murder prosecution claimed deceased made attack with knife, evidence on cross-examination that defendant's witness, testifying regarding deceased's reputation, did not know of deceased's cutting any one, held properly admitted.**

In murder prosecution, in which defense was that at time of killing deceased was making attack on defendant with a drawn knife, permitting cross-question of defendant's witness, testifying that deceased had reputation of being fussy, turbulent, rowdy man, whether witness had known of deceased's cutting any one with knife, which witness answered in negative, *held* not error.

**7. Witnesses ⟨⟩37(4)—Witness testifying regarding character of deceased in murder prosecution must be qualified by showing he knew deceased's character.**

Witness testifying in murder prosecution regarding character of deceased in community where he lived must first be qualified by showing that he knew character of deceased.

**8. Witnesses ⟨⟩286(4)—Where state asked defendant's witness whether he had known of deceased's cutting or shooting any one, defendant could not ask witness what he had heard about deceased being in fights.**

In murder prosecution, where defendant's witness had testified regarding character of deceased in community, and on cross-examination of witness as to whether he had known of deceased's having cut any one with a knife or having shot any one with a pistol, objection to defendant's question, "Have you heard of his being in fights and trying to cut folks?" *held* properly sustained, since defendant was no more entitled on redirect than on original examination to ask what witness had heard.

**9. Criminal law ⟨⟩1170½(2) — Permitting cross-question whether defendant's witness, who saw killing in front of house, left soon thereafter, answered in negative, held not harmful.**

In murder prosecution, permitting question on cross-examination of defendant's witness, who had seen killing, which occurred in front of house in which she lived and who had removed to another state after difficulty, whether witness left place in day or two and went to another state, which witness answered in negative, *held* not harmful.

**10. Criminal law ⟨⟩1170½(2)—In murder prosecution, permitting cross-question regarding defendant's witness' intoxication at deceased's widow's house after killing, answered in negative, held not harmful.**

In murder prosecution, permitting state on cross-examination of defendant's witness, who saw killing in front of her house, regarding her intoxication some hours after killing at house of widow of deceased, which witness answered in negative, *held* not harmful.

**11. Witnesses ⟨⟩329—Cross-examination of witness in murder prosecution regarding matters to test reliability of witness' recollection held permissible.**

In murder prosecution, cross-examination of defendant's witness as to where she ate dinner, as to where another witness for defendant was, and other questions, *held* permissible to test reliability of witness' recollection.

**12. Witnesses ⟨⟩329—Cross-examination to test reliability of witness' recollection rests in court's discretion.**

Cross-examination to test reliability of witness' recollection is matter resting measurably in discretion of court.

**13. Witnesses ⟨⟩331½—Proof that defendant's witness in murder prosecution who saw killing was drunk hours after killing and miles away held improperly admitted.**

In murder prosecution, where there was nothing to show that defendant's witness, who saw killing, was drunk at time of killing, proof that she was drunk hours afterwards and miles away *held* improperly admitted.

**14. Homicide ⟨⟩118(3)—To constitute place part of "curtilage" from which one attacked need not retreat, it need not be inclosed.**

To constitute place a part of "curtilage" from which one attacked need not retreat, it was not necessary that it be inclosed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Curtilage.]

**15. Homicide ⟨⟩118(3)—Person assailed need not retreat from curtilage.**

A person assailed is not required to retreat from his dwelling nor from curtilage.

**16. Homicide ⟨⟩118(3)—Guest has same rights as property owner as regards retreating from person attacking.**

Guest is entitled to protection law affords to owner of premises or more permanent occupant as regards retreating from person attacking.

**17. Homicide ⟨⟩276—In homicide prosecution, whether killing occurred within curtilage of defendant's host's house held for jury.**

In prosecution for murder, question whether killing occurred within curtilage of defendant's host's house or in yard or other open space in front of premises *held* for jury.

**18. Homicide ⟨⟩300(7)—In murder prosecution, instruction regarding rights of guest in dwelling against intruders held properly refused under evidence.**

In murder prosecution, instruction that guest in dwelling is entitled to all protection law affords owner from intruding persons with felonious intent *held* properly refused, where evidence showed defendant was not in dwelling at time of killing, and whether he was within curtilage was involved in dispute.

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**19. Homicide ⬦⟝300(7)—In murder prosecution, instruction regarding killing intruder upon dwelling in self-defense held properly refused under evidence.**

In murder prosecution, instruction that one who intrudes upon dwelling with felonious intent may be killed without retreat and homicide will be in self-defense, *held* properly refused, where evidence showed defendant was not in dwelling at time of killing and whether he was within curtilage was involved in dispute.

**20. Homicide ⬦⟝300(7)—Instruction that guest in dwelling need not retreat to take advantage of doctrine of self-defense held properly refused in murder prosecution under evidence.**

In murder prosecution, instruction that guest in dwelling is entitled to all protection law affords owner and that defendant was not required to retreat in order to take advantage of doctrine of self-defense *held* properly refused, where evidence showed defendant was not in dwelling at time of killing and whether he was within curtilage was involved in dispute.

**21. Homicide ⬦⟝300(7)—Instruction regarding killing intruder upon dwelling or its curtilage in self-defense held properly refused in murder prosecution under evidence.**

In murder prosecution, instruction that one who intrudes upon dwelling or its curtilage with felonious intent or in such manner as to create reasonable belief in minds of his guests that such is his purpose may be killed without retreat and homicide will be in self-defense *held* properly refused, where evidence showed defendant was not in dwelling at time of killing and whether he was within curtilage was involved in dispute, to be determined by jury.

**22. Homicide ⬦⟝300(13, 15)—Instruction that if defendant fired fatal shot as only probable means of saving his life he was not guilty of murder held properly refused as ignoring aggression and duty to retreat.**

In murder prosecution, instruction that if jury believed that defendant fired shot which killed deceased as only probable means of saving his own life jury should find him not guilty *held* properly refused as ignoring question of fault in bringing on difficulty and duty to retreat.

**23. Homicide ⬦⟝300(13, 15)—Instruction on shooting in self-defense held properly refused as ignoring fault in bringing on difficulty and duty to retreat.**

In murder prosecution, instruction that if jury believed that defendant fired shot which killed deceased as only probable means of freeing himself from present impending grievous bodily harm jury should find him not guilty *held* properly refused as ignoring question of fault in bringing on difficulty and duty to retreat.

**24. Homicide ⬦⟝300(14)—Instruction on self-defense held properly refused as omitting hypothesis that defendant believed he was in immediate danger of death or bodily harm.**

In murder prosecution, instruction that if accused with no intention of bringing on difficulty approached deceased in peaceable manner and deceased made first hostile demonstration by drawing weapon dangerous to life or limb, and if deceased was in such proximity to accused as to make further flight dangerous defendant might lawfully kill deceased, *held* properly refused, since it omits hypothesis necessary to plea of self-defense that defendant had reasonable cause to believe and did believe that he was in immediate danger of death or great bodily harm.

**25. Homicide ⬦⟝308(5)—Instruction regarding killing under influence of passion held properly refused because failing to tell jury that what occurred between parties in previous difficulty could not suffice to reduce killing from murder in first to murder in second degree.**

In murder prosecution, instruction that if jury believed that act of killing, though intentional, was committed under influence of passion or in heat of blood produced by adequate or reasonable provocation and before reasonable time had elapsed for blood to cool and reason to resume its habitual control and it was result of temporary excitement, jury could not find defendant guilty of murder in first degree, *held* properly refused, since it failed to tell jury that what had occurred between parties in previous difficulty while parties were in woods could not suffice to reduce killing from murder in first to murder in second degree.

**26. Homicide ⬦⟝341 — Refusing instruction that one killing under influence of passion cannot be guilty of murder in first degree held not error, where defendant was not convicted of murder in first degree.**

Refusing instruction that if defendant committed act of killing under influence of passion he could not be guilty of murder in first degree *held* not error, where defendant was not convicted of murder in first degree.

**27. Criminal law ⬦⟝829(1)—Refusing instructions covered by charges given is not error.**

Reversible error will not be affirmed by refusal of charges which merely repeat in different language instructions already delivered to jury.

**28. Homicide ⬦⟝300(3)—Instruction on self-defense in murder prosecution held properly refused as failing to adequately describe necessity excusing taking of life.**

In murder prosecution, instruction that if jury believed there was necessity for defendant to shoot and there was no reasonable means of avoiding it by retreating further, burden then rested on state to show that defendant was not free from fault, *held* properly refused as failing to adequately describe or define necessity which would excuse taking of life of deceased, since it should have defined necessity as imminent or as impending and imperious or in equivalent word or phrase.

**29. Criminal law ⬦⟝778(2)—As to self-defense, instruction that burden was on state to prove defendant was at fault in bringing on difficulty held properly refused as incomplete.**

In murder prosecution in which defendant claimed he shot in self-defense, instruction that

burden was on state to prove that defendant was at fault in bringing on difficulty *held* properly refused as incomplete and misleading statement of relevant law, since burden predicated by charge devolves upon state only when defendant has shown that he acted to save life or limb and with no avenue of escape open to him that would not have increased his peril.

**30. Criminal law ⟨⟨⟩⟩776(4)—Instruction that proof of good character may be sufficient to authorize acquittal, in connection with other testimony, held properly refused.**

In murder prosecution, instruction that proof of good character may be sufficient to authorize acquittal when taken in connection with all other testimony *held* properly refused, since proof of good character does not authorize an acquittal where state has shown guilt beyond reasonable doubt, although it may help to generate reasonable doubt.

**31. Criminal law ⟨⟨⟩⟩564(1)—Where only evidence on subject showed killing in L. county, proof of venue was sufficient.**

Where only evidence on subject tended to show that killing took place in L. county, proof of venue laid in indictment was sufficient, and defendant's charge in effect that there was no proof of necessary venue was properly refused.

Appeal from Circuit Court, Lee County; James A. Hines, Judge.

Fred Bowen was convicted of murder in the second degree, and he appeals. Reversed and remanded.

The following charges were refused to defendant:

"(1) Gentlemen of the jury, if you believe from the evidence that Fred Bowen fired the shot which killed the deceased, as the only probable means of saving his own life, you will find him not guilty.

"(2) Gentlemen of the jury, a guest in a dwelling is entitled to all the protection the law affords the owner from intruding persons with felonious intent.

"(3) Gentlemen of the jury, if you believe from the evidence that Fred Bowen fired the shot which killed the deceased, as the only probable means of freeing himself from present impending grievous bodily harm, you will find him not guilty.

"(4) I charge you, gentlemen of the jury, that if the accused, with no intention of bringing on the difficulty, approached the deceased in a peaceable manner, and the deceased made the first hostile demonstration by drawing a weapon dangerous to life or limb, and if the deceased was in such proximity to the accused as to make further flight dangerous, the defendant might lawfully kill the deceased, and if you believe this from the evidence beyond a reasonable doubt, you must find the defendant not guilty.

"(5) Gentlemen of the jury, if you believe from the evidence that the act of killing, though intentional, be committed under the influence of passion or in the heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time had elapsed for the blood to cool and reason to resume its habitual control, and it is the result of temporary excitement, by which the control or reason was disturbed, rather than by any wickedness of heart, you cannot find the defendant guilty of murder in the first degree."

"(8) Gentlemen of the jury, one who intrudes upon a dwelling with felonious intent, or in such manner as to create a reasonable belief in the minds of the occupants or guests that such is his purpose, may be killed without retreat and the homicide will be in self-defense."

"(11) If the jury believe all the evidence in the case they will find the defendant not guilty.

"(12) Gentlemen of the jury, a guest in a dwelling is entitled to all the protection the law affords the owner. This means that the defendant was not required to retreat in order to take advantage of the doctrine of self-defense in this case."

"(15) Gentlemen of the jury, if from the evidence you believe that there was a necessity for the defendant to shoot, and that there was no reasonable means of avoiding it by retreating further, the burden then rests upon the state to show that the defendant was not free from fault, and if the defendant is not shown to be at fault beyond a reasonable doubt, you will find the defendant not guilty.

"(16) Gentlemen of the jury, one who intrudes upon a dwelling or its curtilage with felonious intent, or in such manner as to create a reasonable belief in the minds of the guests that such is his purpose, may be killed without retreat, and the homicide will be in self-defense."

"(24) Gentlemen of the jury, proof of good character, if proved to your reasonable satisfaction, may be sufficient to authorize you to acquit the defendant, when taken in connection with all the other testimony."

"(26) Gentlemen of the jury, the burden is on the state to prove that the defendant was at fault in bringing on the difficulty."

H. A. Ferrell, of Seale, and Samford & Samford, of Opelika, for appellant.

The trial court erred in overruling defendant's objections and exceptions to the admissibility of testimony. James v. State, 12 Ala. App. 16, 67 So. 773; Nelson v. State, 130 Ala. 83, 30 So. 728; Boyett v. State, 130 Ala. 83, 30 So. 475, 89 Am. St. Rep. 19. There was a failure on the part of the state to prove the venue, and the affirmative charge should have been given at defendant's request. An owner or proprietor of a dwelling need not retreat, to invoke the doctrine of self-defense, if he has fulfilled the other requisites; and the law of this exemption from retreat extends to the curtilage and applies to an invited guest in such home. State v. Patterson, 45 Vt. 308, 12 Am. Rep. 200; Jones v. State, 76 Ala. 8; Mosley v. State (Ala. App.) 112 So. 811; Walker v. State, 205 Ala. 197, 87 So. 833; Madry v. State, 201 Ala. 512, 78 So. 866; 30 C. J. 73. The written charges requested by defendant were erroneously refused.

Charlie C. McCall, Atty. Gen., for the State.

Brief did not reach the Reporter.

---

⟨⟨⟩⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

217 ALA.—37

SAYRE, J. · Appellant was convicted of murder in the second degree. Many exceptions were reserved.

[1] The state's witness Green was allowed to testify: "He (meaning deceased) appeared to me to be dead." The objection is that this was a mere conclusion, an opinion of the witness, invasion of the province of the jury. The court thinks it was a shorthand rendering of the facts, which in the ordinary case—that is. a case not marked by catalepsy or something of that sort—are plain enough. Deceased had collapsed under several pistol wounds, of which the evidence as a whole shows without conflict he died almost instantly. · The question was not wholly without point, because deceased, or his body, was at the moment to which the question related sitting under the steering wheel of an automobile he had been driving, and was asked, we infer, in anticipation of, and to shed light upon, testimony by defendant's witnesses to the effect that, after the shooting, which they said occurred while deceased was on the ground, they had helped deceased into the car and into the seat under the steering wheel. This we say at unnecessary length because appellant thinks the evidence was clearly illegal.

[2] State's witness Green, in agreement with all other witnesses who testified on the subject, testified that deceased was intoxicated and had been for some hours prior to the shooting. There was also evidence that deceased when intoxicated was turbulent and bloodthirsty. Defendant asked the witness: "At any time during that trip"—witness and deceased had gone together from Columbus, Ga., some six or eight miles into this state—"isn't it a fact that you begged Dock (the deceased) to let you take the steering wheel on account of his condition?" The state's objection was sustained without error. If not otherwise objectionable, the question was improper because it asked for the witness' reason. If it was desired that the witness should say that deceased was at that time intoxicated, the question should have been framed to elicit the appropriate answer without the complication suggested by including a reference to the witness' reason, for that was a matter to be inferred by the jury from the relevant physical facts, rather than the incompetent mere thought of the witness (Western Union v. Cleveland, 169 Ala. 131, 53 So. 80, Ann. Cas. 1912B, 534), and the inquiry in the terms in which it was made tended to bring on a collateral and useless inquiry.

[3] Objection to the question, "What was the extent or magnitude of that difficulty?" referring to an altercation between defendant and deceased two or three hours before the killing, was, properly sustained. If defendant desired to show that deceased had threatened defendant with a knife, that bare fact should have been inquired about as being all that was admissible in the circumstances of the killing to be stated hereafter. The witness' judgment as to the "extent or magnitude" of · the previous difficulty was immaterial. · It was for the jury to draw inferences, if any. Jones v. State, 120 Ala. 303, 25 So. 204. The inevitable tendency of the answer expected, viz., a statement of what the witness thought of the previous difficulty, would have been to draw into controversy the particulars of the previous difficulty contrary to the well-established rule.

[4] What defendant said to the witness Fuller in exculpation of his act, after Fuller came upon the scene walking from a distance of 150 yards, being attracted thereto by the sounds of the shots fired from an automatic pistol in rapid succession, was not of the res gestæ and was properly excluded. What defendant then said was not descriptive or explanatory of anything then in progress. It was a retrospective, self-serving, narration of then past facts and was properly excluded. Pitts v. State, 140 Ala. 80, 37 So. 101; Harkness v. State, 129 Ala. 71, 30 So. 73; Nelson v. State, 130 Ala. 83, 30 So. 728. In the case last cited the desired declaration was held to be admissible; but the difficulty in which · deceased in that case was killed, was regarded by the court as still in progress and the declaration there in question as a part of the transaction. Not so in the case at bar.

[5] Proof as to where defendant went after the killing, the state having made no effort to prove flight, could have served no legitimate purpose of the defense. It afforded no insight into motive or malice, nor tended to show, who was at fault in bringing on the difficulty or other pertinent matter. It was excluded without error.

[6] Defendant's witness Hall having testified that deceased had the reputation of being a fussy, turbulent, rowdy man, the state, on cross-examination, was allowed, over defendant's general objection, to ask the witness whether he had known of his cutting anybody with a knife. The witness answered in the negative. The defense was that at the time of the killing deceased was making an attack upon defendant with a drawn knife. The accepted method of cross-examination, where character for peace and quiet is put in issue, is to ask the witness whether he has heard of specific acts of violence. Goodwin v. State, 102 Ala. 98, 15 So. 571. By analogy there was no reversible error in permitting this negative method of sustaining the character of deceased, which had been put in issue by the defendant. Ingram v. State, 67 Ala. 67; Hussey v. State, 87 Ala. 121, 6 So. 420.

[7, 8] In answer to defendant's question whether he knew the character of deceased in the community where he lived as a bloodthirsty, turbulent, fussy, and rowdy man, de-

fendant's witness Newberry said: "Well; he was pretty rough when he was drunk." The court sustained the state's objection, on the ground, as we may assume, that the witness should first have been qualified by showing that he knew the character of deceased, and perhaps because his answer was not responsive. The first ground at least was well taken. Moreover, in the next breath, and in response to a repeated question, as we may assume, the witness qualified himself to answer and did answer the question according to its terms.' On cross-examination the witness further deposed that he had never known of deceased having cut any one with a knife or shot any one with a pistol, saying further that what he meant was that deceased would fight. Then defendant interrogated the witness: "Have you heard of his being in fights and trying to cut folks?" The state's objection was sustained. The court here is of opinion that the defense had the benefit of all it was entitled to in the witness' answer to defendant's repeated question on the direct examination. The jury should be given to understand that the cross-examination of a witness as to character is for the sole purpose of testing the value and weight of his testimony as to the esteem in which the community where he lives or is known holds the subject whose character is brought into question. In forming his estimate the witness may have in mind his own knowledge of the subject of inquiry in connection with his opinion as to what others think; but his knowledge of particular instances is not admissible in evidence. When the state, without objection, elicited the fact that the witness did not know of deceased having shot or cut any one, it was content with less than it might have drawn out by asking what the witness had heard, and defendant was no more entitled on redirect than on original examination to ask what the witness had heard. The witness had answered as to the character of deceased and that was as much as defendant, who called the witness, was entitled to ask; otherwise such examinations might be insufferably protracted and the minds of the jury confused by the investigation of matters merely incidental.

[9-12] The state, on the cross-examination of Mrs. Edwards, a witness called by defendant, and who saw the killing, which occurred in front of the house in which she lived, and who, with her husband (at the time of the trial in a hospital in North Carolina) had removed after the difficulty to that state, asked the witness: "Then you left there [the place where they had lived] in a day or two and went to North Carolina?" Defendant thinks the question in some way reflected unfavorably on his defense. We are unable to agree; but, even if so, the negative answer disarmed the question of all possible harmful tendency. So of the exception reserved to the cross-examination wherein it inquired about the witness' intoxication some hours after the killing at the house of Mrs. Foster, widow of deceased, in Columbus. Again the witness answered in the negative. If, as defendant now suggests, these questions were nothing more than an effort to discredit the witness by unjustifiable insinuations, we are unable to find in them sufficient ground for a reversal. Intelligent jurors probably estimated them according to their true value. And so of still another exception, argued by counsel, relating to the question why deceased called to defendant, who was in Mrs. Edwards' house or on the front porch, to come out to the automobile, in which deceased was. So, also, of numerous questions asked of the witness on cross-examination as to where she ate dinner, as to where Mehaffy, another witness for defendant, was, argued at some length by counsel. This was permissible cross-examination to test the reliability of the witness' recollection—a matter resting measurably in the discretion of the court.

[13] A different question is presented by that ruling of the court, over defendant's objection and exception, by which the state was permitted to contradict Mrs. Edwards by the testimony of Mrs. Foster that she (Mrs. Edwards) was drunk at the house of Mrs. Foster at the time inquired about. There was nothing to show that Mrs. Edwards was drunk at the time of the killing. Proof that she was drunk hours afterwards and miles away should not have been admitted. The ruling was error. Maxwell v. State, 89 Ala. 150, 7 So. 824; Abernathy v. State, 129 Ala. 88, 29 So. 844. And for this error the court is of opinion that the judgment of conviction should be set aside.

The exception to the argument made by the state's solicitor in his closing remarks to the jury, in which he said that Red Edwards (husband of the witness Mrs. Edwards) left in a few days for North Carolina, presents so small and insignificant a fragment of what was meant by the related argument that we are unable to pass upon it intelligently. It seems probable, in any case, that the ruling involved no such serious consequences as that a reversal should be ordered on that account. Collins v. State, ante, p. 212, 115 So. 223; Barnett v. State, 165 Ala. 59, 51 So. 299.

As shedding light upon the conduct of the parties, the defendant and the deceased, at the time of the killing, we may briefly state facts shown in evidence as follows: A number of mill operatives, who lived in Columbus, Ga., came on a Sunday for an outing some six or eight miles across the river into this state. The party was well supplied with "home brew" and "moonshine." Defendant was one of the party. Whether he drank anything was in dispute. He appears at least to have kept decently sober. Whether

deceased, a barber in Columbus, was an invited member of the party does not appear. Some of the women stopped at the house of Mrs. Edwards. While the men were collected at a spot in the woods, 150 to 200 yards from the Edwards house, deceased, drunk, drove his car up to them and thereafter referred to the women in the party as whores. Defendant objected, and this led to an altercation in which deceased threatened defendant with a knife and heaped upon him the vilest epithets imaginable. Then deceased lay upon the ground and took a nap. Two or three hours later defendant was at the Edwards house when deceased drove his automobile up to the front of the house. Some of the evidence went to show that the automobile stopped within the front yard, which was unfenced. The car was in front of the house, but it may not have been in the yard, which seems not to have been defined by fence or otherwise. Deceased called defendant out to the car. After that the evidence was in wide and irreconcilable conflict as to what happened. The state's version of the facts was that the defendant approached the car where deceased sat under the steering wheel, announced his purpose to kill deceased, and then, without hostile demonstration on the part of deceased, fired into him three shots from an automatic pistol in rapid succession. Deceased died where he sat. Defendant's version was that when he approached the automobile in answer to the summons from deceased and without demonstration of hostility on his part, deceased alighted from the automobile with a knife drawn, whereupon deceased retreated back to the house, into one of the front rooms, where he saw and took a pistol from the mantel, thence into the adjoining room, and out at the door thereof back onto the front porch, thence into the front yard and near again to the automobile, deceased all the while in pursuit, where, coming into close proximity to the automobile, he shot deceased.

[14-17] Defendant requested many charges on the subject of self-defense and in particular self-defense as modified by the fact, as he contended, that he was an invited guest on the premises where the Edwards lived. There was evidence to support the contention that defendant was at the Edwards house as an invited guest, and, as we have already indicated, that he was at the time of the shooting within the curtilage thereof. To constitute the place a part of the curtilage it was not necessary that it be inclosed. Ivey v. State, 61 Ala. 61. A person assailed is not required to retreat from his dwelling, and the same doctrine is applied to the curtilage. Madry v. State, 201 Ala. 512, 78 So. 866. And a guest is entitled to the protection the law affords to the owner or more permanent occupant. Walker v. State, 205 Ala. 200, 87 So. 833. We think it was for the jury to determine whether the killing occurred within the curtilage of the Edwards house, or in the road or other open space in front of the premises.

[18-21] Charge 2, refused to defendant, was misleading, to say the least, and predicated the right of defendant, in effect, as if he were within the curtilage. Clearly defendant was not in the dwelling at the time of the killing, and whether he was within the curtilage was involved in dispute, to be determined by the jury. So of charges 8, 12, and 16. Watkins v. State, 89 Ala. 88, 8 So. 134.

[22, 23] Charge 1, refused to defendant, ignored the question of fault in bringing on the difficulty and the duty to retreat, if, as the state contended, the killing took place neither in the dwelling house nor within the curtilage thereof. So of charge 3.

[24] Charge 4 omits the hypothesis, necessary to the plea of self-defense, that defendant had reasonable cause to believe, and did believe, that he was in immediate danger of death or great bodily harm. It was properly refused.

[25, 26] In view of the trouble between defendant and deceased prior to the time of the killing, charge 5 was properly refused, for that it failed to tell the jury that what had occurred between them in the previous difficulty—what had been said and done while the parties were in the woods—could not suffice to reduce the killing from murder in the first to murder in the second degree. Moreover, defendant was not convicted of murder in the first degree.

[27] Charges 6, 14, 17, 18, 19, 20, 22, and 25 stated in varying language the proposition of reasonable doubt, and were well covered by the trial court's oral instruction to the jury. Reversible error will not be affirmed of the refusal of charges which merely repeat in different language an adequate instruction already delivered to the jury.

[28] Charge 15 was well refused for the reason that it failed adequately to describe or define the necessity which would excuse the taking of the life of deceased. In the language of repeated decisions, it should have defined the necessity as imminent, or as impending and imperious, or in equivalent word or phrase (Dolan v. State, 81 Ala. 11, 1 So. 707), and, further, as a necessity to take life in order to avoid the threatened danger. It appears to have been considered heretofore that an adjective or two should be used in charges of this general character as serving to help the jury understand the serious requirements of the law when it comes to consider an excuse offered for the taking of human life.

[29] Charge 26 was refused without error as being an incomplete and misleading statement of the relevant law. The burden predicated by the charge devolves upon the state only when the defendant has shown that he

acted to save life or limb and with no avenue of escape open to him that would not have increased his peril. Pugh v. State, 132 Ala. 1, 31 So. 727.

[30] Proof of good character does not authorize an acquittal in case the state has shown guilt beyond a reasonable doubt. It may, however, help to generate a reasonable doubt—a different proposition from that of defendant's charge 24.

[31] Defendant's charge 11 asserts in effect that there was no proof of the necessary venue. We do not agree. The only evidence on that subject tended to show that the killing took place in Lee county. There was none to the contrary. While the evidence was not as clear as it might have been, it can by no means be said there was no evidence of the venue laid in the indictment.

Reversed and remanded.

ANDERSON. C. J., and GARDNER and BOULDIN, JJ., concur.