19 So.2d 81

### JONES v. STATE.

#### 5 Div. 167.

Court of Appeals of Alabama.

Jan. 18, 1944.

Rehearing Denied April 18, 1944.

Further Rehearing Denied Aug. 22, 1944.

505

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

Gerald & Gerald, of Clanton, for appellant.

SIMPSON, Judge.

Jaffie S. Jones, brother of appellant, fired the shot which killed John Speer. Warren Henderson Jones, this appellant, drove the automobile in which the two proceeded to the deceased's filling station about midnight and summoned him from his residence across the street. When he appeared Jaffie Jones shot and killed him without apparent justification or excuse (unless it be, as claimed by the appellant, deceased made a sufficient demonstration, etc.). The State's evidence tended to substantiate that appellant was a co-conspirator and an aider and abettor in the homicide.

Appellant was the only eyewitness and contended that his brother, Jaffie, did not fire until deceased made a demonstration. Jaffie (not on trial in this case) did not tes-

tify, and much of the evidence in the present record relates to the appellant's contention that Jaffie Jones was insane and legally irresponsible.

The four points relied upon for reversal have been ably argued by learned counsel and are the only ones meriting treatment, so discussion is confined to them.

■ The first and principal insistence is that error prevailed in permitting the sanity experts (physicians) of the State to testify (in rebuttal of defendant's expert witnesses, claiming insanity of Jaffie) that they had been requested by the State, or appointed by the court, to examine Jaffie Jones relative to his mental condition while in jail prior to trial. Counsel for appellant seriously contend that here was grave prejudice against defendant.

The statute, Code 1940, Title 15, Section 425, among other things, makes provision for a preliminary examination into the sanity of a defendant indicted for a capital offense, and it is quite apparent from this record that the said State's witnesses were appointed by the presiding judge, pursuant to said statute, for the purpose of examining Jaffie Jones, who was under similar indictment as this defendant. We perceive no injury to defendant in permitting them to testify that their examination of the other Jones (whom this defendant sought to prove insane) was under this authority. Especially do we think the record fails to show injury in view of the instruction to the jury by the court that the testimony of these witnesses should "be considered the same as other witnesses. Their qualifications and their opportunities for seeing and knowing what they testify about would be the same as other witnesses, and other witnesses would be considered as to their opportunities and their knowledge and means of knowing what they testify about the same as witnesses obtained in the manner I (court) have told you about."

■ While evidence of Jaffie's insanity was probably admissible as of the res gestae, it is timely to observe that the insanity, if so, of the gun wielder, Jaffie, would not exculpate the appellant if he conspired with the principal or aided or abetted him in the killing of deceased (and this was the only theory upon which appellant's conviction could rest). If appellant so conspired or aided or abetted in the homicide, the mental irresponsibility of Jaffie Jones could not be invoked to exonerate said appellant. One may or could use an insane person as the agent of destruction— or conspire with such person to accomplish the homicide—just as guiltily as with a person of sound mind. The fact, if true, that the co-conspirator or principal in the crime is not amenable to justice because of mental irresponsibility does not exempt the other from prosecution. Pruitt v. State, 91 Tex. Cr.R. 189, 237 S.W. 572; People v. Armstrong, 299 Ill. 349, 132 N.E. 547; Conley v. People, 170 Ill. 587, 48 N.E. 911; 22 C.J.S., Criminal Law, §§ 85, 101.

■ The next insistence challenges the rulings of the court relating to the cross-examination of defendant's witnesses who testified to the bad character of deceased for peace and quiet.

The rule as to this is that upon cross-examination character witnesses may be asked if they had not heard of specific acts of violence on the part of the person testified about. Bowen v. State, 217 Ala. 574, 578, 117 So. 204; Thompson v. State, 100 Ala. 70, 14 So. 878; Bedingfield v. State, 24 Ala.App. 398, 135 So. 656; Chiles v. State, 26 Ala.App. 358, 159 So. 700. But they may not be interrogated as to the fact of such particular acts. Andrews v. State, 159 Ala. 14, 25, 48 So. 858; Smith v. State, 197 Ala. 193, 197, 72 So. 316; Moulton v. State, 88 Ala. 116, 120, 6 So. 758, 6 L.R.A. 301.

■ Nevertheless, we do not think the cross-examination of the character witnesses transgressed these well known principles. Typical instances claimed as error are as follows: Defendant's witness Alston, who had already testified, "I don't know who he (deceased) has ever killed; I heard that he killed John Hopper; he was never indicted for it; I did not hear he killed him in Chilton County", was asked by the solicitor, "Do you know anything bad in the line about which you are testifying that he ever did", and, over due objection and exception, answered, "Well, I don't know personally of anybody he ever killed." Defendant's witness Duffey on cross-examination was asked by the solicitor, "Did you ever see him in a fight down there around his place * * * do you know of any fight he had", and, over due objection and exception, answered, "No." There were other questions of like tenor propounded to other of defendant's witnesses and negative answers thereto showing that the witnesses had no personal knowledge of acts of violence reputed to deceased.

■ While this is not the accepted method of cross-examining a character witness, it has had the approval of our Supreme Court. Bowen v. State, 217 Ala. 574, 578(6), 117 So. 204, 208. As observed in that case, "The accepted method of cross-examination, where character for peace and quiet is put in issue, is to ask the witness whether he has heard of specific acts of violence. Goodwin v. State, 102 Ala. [87], 98, 15 So. 571. By analogy there was no reversible error in permitting this negative method of sustaining the character of deceased, which had been put in issue by the defendant."

■ Moreover, in forming his estimate of the person's character, the witness may and often does "have in mind his own knowledge of the subject of inquiry in connection with his opinion as to what others think" (Bowen case) and the import of the questions above was to elicit whether their opinion of the deceased's character was based exclusively upon hearsay (opinions expressed by others) or partly upon their own knowledge. The answers to the questions indicated the former, and, under the wide-latitude rule prevailing as to cross-examination of witnesses, no error prejudicial to defendant intervened here.

The contention is also advanced that a new trial should have been ordered, first because (allegedly) the jury returned a quotient verdict and second because the verdict was against the great preponderance of the evidence. The argument is wholly untenable.

■ As to the insistence that the verdict was quotient, the burden is upon defendant to prove it, which he has not done. Unless there was a positive prior agreement to abide by the result of a quotient calculation and the later adoption of same by the jury as their verdict, there is no error. Morgan v. State, 20 Ala.App. 331, 102 So. 236; Harris v. State, 241 Ala. 240, 2 So.2d 431; Sanders v. State, 243 Ala. 691, 11 So.2d 740; 23 C.J.S., Criminal Law, § 1374; Hoffman v. City of St. Paul, 187 Minn. 320, 245 N.W. 373, 86 A.L.R. 198; 52 A.L.R. 41. No such situation was shown to have existed in the present case. On the contrary, the testimony of the two jurors—permissible to sustain (Mobile & O. R. Co. v. Watson, 221 Ala. 585, 130 So. 199) but, generally, not to impeach (Brackin v. State, Ala.App., 14 So.2d 383, 385 [1]) their verdict

—taken upon the hearing of the motion for new trial clearly established the regularity of the verdict returned.

Equally non-tenable is the final contention that the verdict was overwhelmingly against the weight of the evidence. Viewing the evidence impartially, we are unable to concede the slightest merit to this insistence.

The whole record carefully considered in connection with the cogently argued points by appellant's able counsel, we have concluded that no error is shown substantially prejudicial to appellant and that an affirmance of the judgment must be ordered.

Affirmed.

On Rehearing.

PER CURIAM.

In deference to the argument of learned counsel on rehearing, we make this brief response.

■ It is asseverated that to allow the State's sanity experts to testify that their examination of Jaffie Jones was by court appointment was a prejudicial violation of the rule that a party may not, as a general proposition, add credit to his own witness by showing his lack of bias or interest until the opposing party has attempted to impeach him. The following cases are cited to sustain the argument: O'Rear v. Manchester Lumber Co., 6 Ala.App. 461, 60 So. 462; Parker v. State, 10 Ala.App. 53, 65 So. 90. The tenor of these holdings is that it is not error for the trial court to refuse to permit a party to show lack of bias or interest of his witness until the opposing party has sought to impeach such witness. The converse, however, may not always hold true, viz., that to permit a party to do so would be prejudicial error. Unless, of course, substantial prejudice to the defendant appears by the admission of such evidence, a reversal would be unauthorized. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix, p. 1022; Robinson v. State, 238 Ala. 441(5), 191 So. 655. We think we have demonstrated in our original opinion, hereinabove, that the defendant suffered no prejudice by the trial court's ruling aforesaid.

■ As to the argument that error prevailed in the rulings relating to cross-examination by the State of the character witness proffered by defendant to show deceased's bad character for peace and quiet,

508

we had thought the matter sufficiently covered in the original opinion. It is now asserted that a different rule should govern such cross-questioning as "Did you ever see him (deceased) in a fight around his place" (record, p. 57), and "Was he (deceased) ever indicted" (meaning for a murder "the public thought he (deceased) was interested in"). The first question is manifestly controlled by the rule in the Bowen case, as pointed out originally, above. And as to the latter question it is in response to the previous testimony of the witness that "the public thought he was interested in a murder case down there. That is what the public thought." Record, p. 56. Here, likewise, we are unable to detect that dire prejudice to defendant, so earnestly urged upon us, as to warrant a reversal of the case.

We feel duty bound to overrule the application.

Rehearing denied.