36 So.2d 225

**BURNS v. STATE.**

8 Div. 403.

Supreme Court of Alabama.
June 24, 1948.

Merwin Koonce and W. A. Barnett, both of Florence, for appellant.

A. A. Carmichael, Atty. Gen., and Mac-Donald Gallion, Asst. Atty. Gen., for the State.

**3**

BROWN, Justice.

The appellant was indicted for the offense of murder in the first degree, the indictment charging that he unlawfully and with malice aforethought killed Edgar Morris by shooting him with a shot gun. He was convicted of murder in the first degree and his punishment was fixed by the verdict of the jury at life imprisonment in the penitentiary, and from the judgment of conviction he brings this appeal. Appellant's version of the killing is stated in brief as follows. "On Friday afternoon, July 25, 1947, Enoch Edgar Morris, accompanied by Penny Anders went to the home of Willie Oscar Burns. Penny Anders testified that as soon as they turned to go toward Burns' house that Morris loaded his shotgun. That Morris went to the Burns home which was approximately a quarter of a mile from the Morris home, pretending to be looking for chickens. Morris went into the yard where Burns and his family were sitting and asked about a chicken. Burns asked his wife to show Morris a chicken in the back yard. As Mrs. Burns got up and walked toward the back, Morris told Burns that he was going to kill him. Burns, being in his own yard, got up, walked in the house and got his gun and when he started around the house toward the back, Morris was standing holding the gun on the kitchen door. When Morris saw the appellant, he swung and pointed his gun at Burns. Burns seeing the danger that he was in shot Morris one time with the gun. It is undisputed that there was only one shot fired; that this shot entered Morris' left arm between the wrist and elbow and the same shot or load entered the body 2½ inches below the left nipple, and to the left of the midline of the body. The entrance of the same shot or pellets through the left arm and the left chest indicate that Morris had his gun in a shooting position at the time Burns fired the fatal shot. Lester Vickery testified that Morris was standing with his left arm down by his side. Morris dropped his gun near the back door of the Burns home where he was standing, walked off a few feet and died."

The state's version of the case is thus stated in brief. "The deceased, Rev. Edgar Morris, lived nearby the home of defendant in the cotton mill section of Florence. The deceased had a number of chickens, some of which from time to time strayed into the yard of defendant to the great dissatisfaction of said defendant. The evidence indicates that defendant's feeling toward the deceased was one of enmity because of this fact and other extenuating facts which included defendant's belief that deceased had previously turned him in for selling whiskey. Evidence was further adduced which tended to show that defendant was of a turbulent nature, inclined to imbibe too freely of spirits, and as having a general bad reputation in the community in which he lived. Witnesses for the State testified that defendant stopped by the house of deceased on the day previous to the killing, threatened deceased about the chickens being on his property, and stated that he wanted deceased to 'come get them.' Defendant also stated at this time that deceased had treated him 'dirty as hell' by turning him in previously for selling whiskey.

"On the date of the killing, in the late afternoon, the deceased visited the premises of defendant in the company of one Penny Anders, a young boy. Deceased had taken his shot gun and had left his own residence with the expressed intention of killing such stray chickens as were then on the property of defendant. The two came up to defendant's home where defendant was sitting on the porch. Deceased had his gun on his shoulder where it remained the entire time. Deceased stated that he intended to dispose of the chickens that were bothering the defendant, whereupon the defendant told his wife to accompany deceased to the side rear of the house and show him one of the dead chickens there. Deceased followed defendant's wife to the side rear of the house and thereupon observed the aforementioned chicken. Standing nearby were defendant's wife, the boy, Penny Anders, and one Lester Vickery, a

4

brother-in-law of defendant who had appeared. Defendant suddenly came around the corner of the house with a twelve gauge shotgun and shot the deceased at close range, stating, 'God damn you, I told you to stay off my premises, didn't I?' The deceased had not spoken previously to defendant, had made no overt act toward defendant, and deceased's gun was still on his shoulder. The shot penetrated deceased's left arm and chest. Thereupon deceased staggered a few steps and fell."

The appellant's first contention is that the killing was the result of sudden passion engendered by the act of Morris turning and leveling the gun on the defendant and he was justified in using whatever force was necessary to protect himself. The evidence is undisputed that when Morris went to the house of the defendant, the defendant and his wife were on the porch and after defendant had told his wife 'to show Morris the chickens, or one of them, he went into his house, loaded his gun and came back out in the yard where he shot and killed the deceased.

■ If it be assumed that the defendant was not at fault in bringing on the necessity to kill, as a matter of law, under the doctrine of Watkins v. State, 89 Ala. 82, 88, 8 So. 134, it was clearly a question for the jury (Russell v. State, 219 Ala. 567, 122 So. 683; Bowen v. State, 217 Ala. 574, 580, 117 So. 204; Roan v. State, 225 Ala. 428, 435, 143 So. 454), and there was ample evidence to support the conclusion as expressed in the verdict.

■ Appellant's next contention is that the punishment inflicted by the verdict of the jury was excessive and, therefore, the verdict of the jury and judgment of the court were contrary to the great preponderance of the evidence. This we are not able to affirm. There was ample evidence to sustain the conclusion that the killing was the result of malice aforethought and it was within the providence of the jury to fix the punishment at life imprisonment in the penitentiary.

■ Charge 5 refused to the defendant was covered by given charge 6 and charge 24 refused to the defendant is argumenta-tive and was properly refused. No exception was reserved to the oral charge of the court for not charging on the offense of manslaughter and no written charges were requested in respect to any such question. Therefore, the question of the degree of the offense under murder in the second degree is not presented on this record. McPherson v. State, 198 Ala. 5, 73 So. 387.

■ The jury returned a verdict finding the defendant guilty of murder in the first degree and fixing his punishment at life imprisonment in the penitentiary. This verdict was followed by a judgment of conviction for that offense, reciting in the judgment of conviction the verdict of the jury. Then followed the judgment of sentence, sentencing the defendant to 30 years imprisonment in the penitentiary, as appears from the record certified here by the clerk of the circuit court. In response to certiorari issued the clerk has sent up affidavits showing that after he had entered on the minutes of the court the judgment of conviction, he thereafter looked at the bench notes in another case wherein the defendant was sentenced to 30 years in the penitentiary. There is nothing sent up in response to the certiorari going to show that the judgment has been amended nunc pro tunc or any action of the court taken in respect thereto. The clerk had no authority to change the minutes as first written and as certified to this court in the record on this appeal. The court only could change the order of the court. The judgment of sentence is, therefore, inconsistent with the verdict of the jury and is not authorized by law. The same is set aside, vacated and annulled. The judgment of conviction entered on the verdict of the jury is affirmed and the cause is remanded to the circuit court for proper sentence as indicated by the verdict of the jury. Minto v. State, 9 Ala.App. 95, 64 So. 369, certiorari denied Ex parte Minto 187 Ala. 671, 65 So. 516.

Affirmed in part and in part reversed and remanded.

GARDNER, C. J., and LIVINGSTON and SIMPSON, JJ., concur.