263 So.2d 705

Roger Dale **BRIDGES**

v.

**STATE.**

7 Div. 101.

Court of Criminal Appeals of Alabama.

June 13, 1972.

Robert W. Weaver, Talladega, for appellant.

William J. Baxley, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

PER CURIAM.

The indictment charged the appellant with the robbery of Roger Davis Fike and

Samuel Louis Grice, II. Appellant entered a plea of not guilty. His trial resulted in a verdict of guilty and judgment was entered in accordance therewith. Hence, this appeal.

On the trial Samuel Louis Grice, II, testified in substance that he was riding in a car driven by his friend Roger Davis Fike in Talladega when he saw a car following them; that Fike turned a corner and the other car turned and pulled alongside them; that the people in the other asked them to stop; that they at first drove on but later backed up and stopped; that Frankie Salster and the appellant, Roger Dale Bridges, were in the other car; that the windows of Fike's car were partially open and the doors were locked; that appellant got out of his car, came to Fike's car, reached in, unlocked the door on the passenger side, opened it, and asked the witness to lend him some money; and that he also asked Fike to lend him some money.

The witness further stated that Salster then asked Fike to let him drive his car, got in Fike's car, pushed Fike over, and got in under the steering wheel; that appellant kept asking Fike if he had any money; that Fike finally told him he could let him have four dollars and the appellant said he wanted five; that Fike gave appellant a ten dollar bill and appellant said he was going to get it changed at his aunt's house; that Salster turned Fike's car around and went down the Ironton Road; that appellant left first in the Chevrolet he was driving which had a Clay County tag on it; that they followed appellant; that when they proceeded a short distance appellant sped up and signaled for Salster to follow, which Salster did; that they went out that road about a mile, took a right turn, went through a trash dump, and followed that road until it ended and turned on a paved road; that Salster said they were going to his aunt's house but went to an abandoned house; that appellant got out of his car and came to Fike's side of the car; that Salster got out and

came around to the witness's side of the car and told him to get out; that Salster then hit the witness in the mouth and eye with his fist and asked him for his money; that the witness told him he didn't have any; that Salster then hit him six, seven or eight times; that the witness told Salster all he had was a little change and Salster said, "Give it to me;" that he gave him a quarter, a dime and a nickel and he said, "Punk, we didn't come out here for forty cents." A picture of the witness was introduced in evidence and appears in the record. It reveals the injuries inflicted by the beating Salster gave the witness at the time in question.

This witness further testified that at the time Salster was beating him he saw appellant with Fike's billfold, taking out all the money and searching for more; that appellant and Salster then wanted to see what was in the trunk of Fike's car; that Salster opened the trunk and appellant and Salster began taking "equipment and stuff that was in boxes" from the trunk and placing it in appellant's car; that appellant told Fike and him to help them; that they took a camera tripod, a camera with a flash unit attached and a cuckoo clock from Fike's trunk and placed them in appellant's car; that Salster told them they "better not go to the police" and if we did they would "get us"; that they told us to wait for five minutes after they had gone before we left; that Salster said this; that they left with appellant driving; that after they left the witness and Fike cranked up and went to Mr. Buster Hogan's home; Fike's grandfather and the police were called; that appellant was arrested that night in an automobile and that the witness and Fike went that same night to identify the articles taken from the automobile trunk; and that we saw the cuckoo clock and Fike's brother's jacket in the automobile.

Roger Davis Fike's testimony was in substance the same as that of the witness Grice. However, since the appellant was

the person who dealt with him after the two cars arrived at the abandoned house, he was able to testify more in detail as to the activities of appellant at that time. This witness testified in substance as to the events which took place at the scene of the robbery that appellant, in his car which was in front of the car in which the witness and Grice were riding, drove up to the vacant house; that Salster drove Fike's car up near appellant's car and stopped; that the lights of both cars were turned off; that it was a dark night; that Salster got out of Fike's car and went around to the passenger side and told Grice to get out; that appellant came over and sat on the seat by him and told the witness to give him his billfold and the rest of his money; that he was afraid and that he gave appellant the billfold which contained four one dollar bills; that appellant put his hand in the witness's pocket and got the change he had, a nickel and five pennies; that appellant still had the ten dollar bill he had previously given him to get changed; that appellant also got some keys out of his pocket; that at that time Salster was hitting Grice; that appellant got out of the car and looked over it toward Salster as Salster was hitting Grice while holding him by the shoulder; that appellant got back in the car and asked the witness what was in the trunk of the Mustang (the car which Fike had been driving when they first encountered appellant and Salster and which belonged to Fike's brother); that appellant asked him what was in the glove compartment of that car and that he showed him after appellant told him to open it; and that Salster opened the trunk of Fike's car. The witness described the trunk's contents and stated that after appellant was arrested he saw his brother's jacket, which had been taken from the trunk, at the police station (this jacket was introduced in evidence); and that after the items were taken from Fike's trunk and placed in appellant's car he and Grice were told to remain at the scene for five minutes after Salster and appellant left.

The evidence offered on behalf of the State further showed that the two victims of the robbery were boys sixteen years of age, that each weighed less than one hundred and thirty-eight pounds, and that they were unarmed at the time.

The State offered other evidence tending to show that the appellant was arrested on the night of the robbery, shortly thereafter; that at the time of his arrest he was driving the car in which the property taken was placed; and that some of the property taken in the robbery was still in that car when he was arrested.

We have not here stated all of the facts shown by the State's evidence, only the ones sufficient to answer the questions posed by this appeal.

The motion of the appellant to exclude the evidence made at the time the State rested was overruled by the trial court and appellant complains that error arises from that ruling.

The appellant also makes the claim on this appeal that an aider and abetter of a principal cannot be found guilty of a greater offense than the principal and that since the principal, Salster, was given a sentence of five years in the penitentiary for assault with intent to rob on his plea of guilty, the appellant's punishment could not exceed five years imprisonment.

There was substantial evidence presented by the State as to the guilt of the appellant and a jury question was clearly made out. Therefore, the appellant's motion to exclude the evidence was correctly overruled by the trial court.

We here turn our attention to the claim of the appellant that an aider and abetter cannot be found guilty of a greater offense than the principal and that his punishment cannot be more than that of the principal.

Tit. 14, § 14, Code of Alabama, 1940, recompiled 1958, provides:

"The distinction between an accessory before the fact and a principal, between

principals in the first and second degree, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must hereafter be indicted, tried, and punished as principals, as in the case of misdemeanors."

The appellant in his complaint makes a distinction between an aider and abetter and a principal which has been abolished by the above statute. This statute in legal effect says if one aids or abets in the commission of an offense, he is a principal and must be indicted and tried as such. Also that statute does not say that two must be found guilty of the same degree of the offense or that they must be given the same punishment. One jury must not be bound by another jury; otherwise it would not be the sole judge of the facts.

In the case of Jones v. State, 31 Ala. App. 504, 19 So.2d 81, Jaffie S. Jones, brother of appellant, fired the shot which killed John Speer. Warren Henderson Jones, the appellant, drove the automobile in which the two proceeded to the deceased's filling station and summoned him from his residence across the street. When he appeared Jaffie shot and killed him. It was claimed that Jaffie was insane at the time. In its opinion the court stated:

"The fact, if true, that the co-conspirator or principal in the crime is not amenable to justice because of mental irresponsibility does not exempt the other from prosecution."

While the *Jones* case, supra, is not altogether in point it does reflect considerable light upon the subject under inquiry. We find no case in Alabama directly in point.

In Christie v. Commonwealth of Kentucky, 193 Ky. 799, 237 S.W. 660, 24 A.L.R. 599, the court said:

". . . It is the settled rule in this state that the principal and the aider and abettor may be indicted or tried jointly or separately. It is also the rule that an aider and abettor in the commission of a felony may be convicted of a felony at a subsequent term of the court, though the principal was tried at a former term, and was either acquitted of the crime charged, or was convicted of a misdemeanor only, and proof of such trial and acquittal or conviction of a misdemeanor is not admissible on the trial of the aider and abettor. . . ."

The Annotation in 24 A.L.R. 603, at 607, which follows the *Christie* case, supra, cites cases from Federal Courts and from Georgia, Iowa, Kansas, New Mexico, Ohio and Texas and states the rule in this manner:

"It follows as a necessary result of the rule permitting the prosecution of an aider and abetter in the commission of a crime after the acquittal of the principal that in the case of a crime admitting of degrees of guilt, where the principal offender has been tried and convicted of one of the lower degrees, one indicted as an aider and abetter can afterwards be tried and convicted of a higher degree of the crime."

■ We accept and agree with that statement of the law. It certainly is a correct statement of the law when applied to Tit. 14, § 14, supra, which provides that an aider or abetter must be indicted, tried and punished as principals.

We reject the complaint of the appellant in this respect.

We have searched the record and find no error therein.

It is ordered and adjudged by the court that the judgment in this cause be and the same is hereby affirmed.

The foregoing opinion was prepared by L. S. MOORE, Supernumerary Circuit Judge, and adopted by this court as its opinion.

Affirmed.

All the Judges concur.