382 So.2d 605 (1980)
Ted Allen McGINNIS
v.
STATE.
6 Div. 851.
Court of Criminal Appeals of Alabama.
December 18, 1979.
Rehearing Denied January 22, 1980.
*606 J. Massey Relfe, Jr., of Relfe, Ramsey & Evans, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., Paul E. Johnson, Asst. Atty. Gen., for appellee.
BOWEN, Judge.
The defendant was indicted for the capital offense involving a nighttime burglary of an occupied dwelling when any of the occupants is intentionally killed. Alabama Code 1975, § 13-11-2(a)(4). The jury found the defendant "guilty in the nighttime with intent to steal of breaking into and entering the inhabited dwelling occupied by Florence Confer Kahler and in the course of said nighttime burglary of said occupied dwelling, did intentionally kill Florence Confer Kahler, as charged in the indictment" and fixed his punishment at death. After a sentencing hearing and after weighing the aggravating and mitigating circumstances, the trial court refused to accept the death penalty as fixed by the jury and sentenced the defendant to life imprisonment without parole.
Three issues are presented on appeal from this conviction: (1) Was the defendant tried by a "prosecution prone" jury because the veniremen were qualified on their beliefs regarding capital punishment?; (2) Does the death penalty constitute cruel and unusual punishment as applied to the defendant considering his involvement in the crime?; (3) Is the Alabama Death Penalty Act unconstitutional since the jury is not permitted to consider any lesser included offense and does not impose sentence after a finding of guilt?

I
Six veniremen were excluded for cause on the basis of their opposition to capital punishment. No claim is made under Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), that it was error to exclude them. At trial, defense counsel made only a general objection without any specific grounds to the exclusion of each venireman.
From our review of the record we are satisfied that their exclusion was not error because from the voir dire testimony, read as a whole as to each juror, it is unmistakably clear that, irrespective of the evidence that would be presented, each excused juror would not return any vote which would impose the death penalty. Witherspoon; Wilson v. State, 371 So.2d 932 (Ala.Cr.App.1978), affirmed, 371 So.2d 943 (Ala.1979). The defendant does contend that the exclusion for cause of prospective jurors who had conscientious scruples against capital punishment subjected him to a "prosecution prone" jury in violation of his constitutional rights. This contention was not presented to the trial court and is initially asserted on appeal.
In Witherspoon, the petitioner alleged that a jury from which have been excluded those who say they could never vote to impose the death penalty, unlike a jury *607 chosen at random from a cross-section of the community, must necessarily be biased in favor of conviction. He maintained that "the kind of juror who would be unperturbed by the prospect of sending a man to his death, . . ., is the kind of juror who would too readily ignore the presumption of the defendant's innocence, accept the prosecution's version of the facts, and return a verdict of guilty". To support this view, the petitioner referred to three studies: W. C. Wilson, Belief in Capital Punishment and Jury Performance (Unpublished Manuscript, University of Texas, 1964); F. G. Goldberg, Attitude Toward Capital Punishment and Behavior As a Juror in Simulated Capital Cases (Unpublished Manuscript, Morehouse College, undated); and H. Zeisel, Some Insights Into the Operation of Criminal Juries 42 (Confidential First Draft, University of Chicago, November 1957). The Court commented upon this information.
"The data adduced by the petitioner, however, are too tentative and fragmentary to establish that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt. We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. In light of the presently available information, we are not prepared to announce a per se constitutional rule requiring the reversal of every conviction returned by a jury selected as this one was." Witherspoon, 391 U.S. at 517-518, 88 S.Ct. at 1774-1775.
The Court indicated that competent evidence establishing "that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt" would be sufficient to show that the jury was not constitutionally "neutral". This language was qualified with a warning that it would be necessary to show "that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction". Witherspoon, 391 U.S. 518-520, 88 S.Ct. 1775-1776; W. White, The Constitutional Invalidity of Convictions Imposed by DeathQualified Juries, 58 Cornell Law Review 1176, 1188 (1973).
Here, the defendant has cited several additional studies, besides those available when Witherspoon was written, to support his contention: Bronson, On The Conviction Proneness and Representativeness of the Death Qualified Jury: An Empirical Study of Colorado Veniremen, 42 U.Colo.L.Rev. 1 (1970); Goldberg, Toward Expansion of Witherspoon Capital Punishment Scruples, Jury Bias and Use of Psychological Data to Raise Presumptions in the Law, 5 Harv.Civ.RightsCiv.Lib.L.Rev. 53 (1969); Crosson, An Investigation Into Certain Personality Variables Among Capital Trial Jurors, Doctoral Dissertation, Western Reserve University (1966); Rokeach & McClellan, Dogmatism and the Death Penalty: A Reinterpretation of the Duquesne Poll Data, 8 Duq.L.Rev. 125 (1970); and White The Constitutional Invalidity of Convictions Imposed by DeathQualified Juries, 58 Corn.L.Rev. 1176 (1973).
In Witherspoon, fn. 11, 391 U.S. at 517, 88 S.Ct. at 1175-1176, the record was "almost totally lacking in the sort of factual information that would assist the Court". In this case the record is totally lacking. No evidence was presented to the trial court on this issue. Indeed, the issue now under discussion was not even made the basis for any objection in the circuit court. Specific objections are necessary before a ruling of the trial judge is subject to review, unless the matter is clearly not proper for any purpose. Nichols v. State, 267 Ala. 217, 100 So.2d 750 (1958); Echols v. State, 256 Ala. 389, 55 So.2d 530 (1952). The Plain Error Rule is limited to cases "in which the death penalty has been imposed". Rule 45A, Alabama Rules of Appellate Procedure. This Court can only consider a case as presented by the record, Jackson v. State, 260 Ala. 641, 71 So.2d 825 (1954), and will not presume a fact not shown by the *608 record and make it a ground for reversal. Duncan v. State, 88 Ala. 31, 7 So. 104 (1889). Furthermore, we do not think that the contention advanced by the defendant is so well established that it is subject to judicial knowledge. See C. Gamble, McElroy's Alabama Evidence, § 480.01 (3rd ed. 1977).
The argument that the State has no legitimate interest in qualifying a jury on the death penalty where that jury does not determine punishment but only guilt is not applicable to the statutory scheme in Alabama. True, under "Alabama's sentencing statute in death cases, the jury is powerless to fix any punishment other than death, if they find the accused guilty" and the jury does not exercise any discretion in fixing punishment. Jacobs v. State, 361 So.2d 640, 643 (Ala.1978). However, the jury's verdict involves more than a simple determination of mere guilt or innocence.
"Under Alabama's scheme, if the jury refuses to follow the legislative mandate, and does not fix the penalty at death, the statutory scheme acts as a form of safety valve, favorable to the accused, because if one single juror refuses to follow the legislative mandate, and refuses to fix the penalty at death, then the trial court may grant a mistrial." Jacobs, 361 So.2d at 643.
For the above reasons, the defendant's argument misses its intended mark.

II
The defendant contends that the sentence of life imprisonment without parole is disproportionate and constitutes cruel and unusual punishment. The defendant's uncle, Charles Holloway, pled guilty to a charge of nighttime burglary and was sentenced to twenty years' imprisonment. He testified against the defendant and admitted aiding the defendant in breaking into the victim's house and stealing her property. However, he denied any participation in the killing which he testified occurred when Mrs. Kahler awoke and recognized the defendant standing in her bedroom while Holloway was in another part of the house. At the sentencing hearing the court found that the killing was "especially heinous, atrocious and cruel because of the 20 to 30 stab wounds on the victim's body".
The trial judge determined that the mitigating circumstances outweighed the aggravating.
"The following are the mitigating circumstances which the Court finds to be present. Firstly, the defendant has no significant history of prior criminal activity. The Court feels and finds that the defendant could be considered under some mental or emotional disturbance, whether it be extreme or mild, the Court would not know, because of the intoxication which I will refer to later. The Court finds that the defendant was under substantial domination of another person, namely Charles Terry Holloway, a hardened criminal, 35 years of age with four felony convictions and an escaped convict at the time of the killing. That is covered by Section 5. The next section is Section 6, the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law were substantially impaired and the Court finds, of course as everyone has heard, the defendant was a chronic and acute alcoholic of long duration and on this tragic occasion was in the opinion of the Court drunk or substantially intoxicated so that his capacity to understand or appreciate his conduct was in the Court's judgment impaired. The last one is the age of the defendant, 22 years of age, is not in and of itself mitigating, but when you look at the other circumstances taken as a whole, the Court so considers it.
"After weighing the aggravating and mitigating circumstances, the Court refuses to accept the death penalty as fixed by the jury and sentences the defendant to life imprisonment without parole."
In view of these circumstances, we do not consider the defendant's sentence cruel and unusual. While the defendant's sentence is in fact disproportionate to Holloway's, Holloway was neither charged nor convicted for killing Mrs. Kahler.
*609 The punishment given an accomplice may exceed that given the principal. Bridges v. State, 48 Ala.App. 249, 263 So.2d 705 (1972). Moreover, it is not required that the principal be convicted or even that his identity be established. United States v. Merriwether, 329 F.Supp. 1156 (S.D.Ala.), affirmed, 469 F.2d 1406 (5th Cir. 1971).

III
Alabama's sentencing scheme is constitutional. Jacobs v. State, 361 So.2d 640, 654 (Ala.1978).
We have searched the record as required by law and found no error prejudicial to the rights of the defendant. The judgment of the circuit court is affirmed.
AFFIRMED.
HARRIS, P. J. and TYSON and BOOKOUT, JJ., concur.
DeCARLO, J., concurs specially.
DeCARLO, Judge, concurs specially.
Although it is alleged that this appellant was under the dominion of another person, the hard fact remains that the victim of this nighttime burglary was stabbed some twenty to thirty times by this appellant while the person who was supposed to be the dominant force was in another room at the time.
Further, the fact that appellant was a chronic alcoholic and was alleged to have been under the influence of alcohol at the time, in no way excuses this barbaric nighttime attack on a defenseless woman while she lay in her bed in the confines of her home.
Appellant's complaint that his punishment of life without parole was cruel and unusual is empty when compared to the victim's fate. I am sure she would have preferred the luxury of a trial before her life was butchered from her. However, she was not afforded the rights which the appellant enjoys today, the least of which is being able to see another new day of life.
From the facts in this case compared with other cases before this court where death has been mandated, the true heinousness and atrociousness of this vile act is shown. It is unfounded that appellant should suffer any lesser punishment.
This case should be remanded to the Jefferson Circuit Court for proper sentencing under the rationale of Lewis v. State, 380 So.2d 970 (1979).