David B. Beech was tried for and convicted of capital murder pursuant to § 13A-5-31 (a)(10), Code of Alabama 1975. The appellant was found guilty of murdering James Evans and Joseph Couey "by one or a series of acts" wherein the victims were brutally beaten and repeatedly stabbed with a knife and each victim's throat was slashed.
In a separate sentencing hearing the trial court, pursuant to the jury's recommendation, sentenced the appellant to life imprisonment without parole.
The victims were discovered just after 7:00 on the morning of July 27, 1980, in *Page 1332 
Room 15 at the Taylor Motel in Mobile. Both victims were dead at the scene and their nude bodies were covered with blood. One of the victims had been stabbed with a knife 47 times and the other 27 times. They had each been beaten with blunt objects — clubs, fists, chairs or the like — and each had had his throat slashed. The motel room was in complete disarray, evidencing a significant, struggle between the victims and their assailants. The walls, bed linens, the furniture, and the floor were splattered and smeared with blood. A medical expert with the State of Alabama Department of Forensic Sciences testified that from his view of the scene of the crime and the nature of the wounds inflicted upon the victims he had concluded that it would have been impossible for the victims to have been murdered by one person acting alone.
The appellant, along with Michael Nelson, Holly Carter, and Theresa Manders, had checked into Room 15 at the Taylor Motel on Thursday, July 24, 1980. On the morning of July 27, just before the murder victims were discovered in his motel room, the appellant had been discovered in the parking lot in front of Room 7 where he had "passed out." The police had just responded to the motel clerk's call and had arrested the appellant for public drunkenness when the maid, using her pass key, discovered the victims in appellant's room.
It is undisputed that the appellant and Michael Nelson were, for all practical purposes, male prostitutes. On the evening of July 26, 1980, a Saturday night, the two roommates met and had drinks with Joseph Couey, a prior acquaintance of the appellant, and James Evans. After Couey and Evans had bought several rounds of drinks for the appellant and Nelson at the Fireside Lounge the foursome drove back to appellant's and Nelson's motel room.
The key witnesses for the prosecution were Holly Carter and Jerry Cowart. Holly Carter, a prostitute, was a friend of the appellant and had been staying with him in Room 15 at the Taylor Motel. Jerry Cowart was also a friend of the appellant and was, allegedly, Theresa Manders' uncle. He had frequented Room 15 while the appellant, Teresa, and the others, resided there.
Carter testified that when the appellant, Nelson, Evans and Couey, left the Fireside Lounge around midnight, the appellant indicated that he and Nelson were taking the other two men back to the motel to perform sexual favors for money. She stated that when she saw the appellant and Nelson again, about two hours later, they had each changed shirts, and the appellant had a bandage on one arm. The appellant told her that he had hit one of the other men in the head and that Nelson had cut both their throats. She did not believe the appellant until he offered to take her back to the motel and show her. Later, after the appellant "passed out" from drinking, she took one of the victim's car keys from the appellant and drove the victim's car to New Orleans, Louisiana, where she was subsequently arrested by the authorities.
Cowart testified that he had seen the appellant and Nelson several times that Saturday night. He had started drinking with the appellant sometime after 2:00 a.m. when the appellant told him "he [the appellant] killed two dudes" earlier. Cowart stated that the appellant was not "drunk" at that time, but that he proceeded to get drunk until he eventually "passed out." Cowart, who knew that the appellant was staying in Room 15 at the Taylor Motel, found someone to give them a ride to the motel. He did not have any money to pay for the ride so he gave the driver a wrist watch, later identified as one of the victim's watches, that he found in appellant's pocket.
Thomas Carmichael testified that he gave Cowart and the appellant a ride back to the Taylor Motel. When they arrived at the motel, Cowart disappeared to go find a room key for appellant's room. Carmichael waited for a few minutes and when Cowart failed to return, he dumped the appellant, who had "passed out," out into the motel parking lot and left. Carmichael confirmed the fact that Cowart had given him a watch with a broken band in exchange for the *Page 1333 
ride, and he helped the authorities recover the watch and the band.
A blood analyst with the State of Alabama Department of Forensic Sciences testified that blood found on appellant's shirt, on the shoes that the appellant was wearing when arrested, on shoes recovered from one of the victim's automobiles, and on the pocket of appellant's jeans, was all consistent with appellant's blood type. However, some blood found on the back of appellant's pants leg was consistent with the blood types of both victims and with the blood found on the bed linen and the walls at the scene of the murders.
The appellant testified as his only witness in defense. He stated that he had met Joseph Couey a week before he was killed and had performed sexual favors for him in exchange for money. He admitted that he, Nelson, and the two victims returned to Room 15 at the Taylor Motel shortly after midnight as the prosecution witnesses had described but added that Holly Carter had returned with them. His alibi was that when they reached Room 15, Couey requested that he be left alone with Evans for a little while. The appellant explained that both victims were fully clothed when he and Nelson left and that he took Evans' car as suggested by Couey. He denied any knowledge of the events that led to the double murder in his motel room.
According to the appellant, he and Nelson drove from the motel to Ruby Lee Salva's home between 12:00 and 1:00 a.m. where Nelson returned some money that he had borrowed. While there, Nelson got into a fist fight with another man. The appellant stepped in to break up the fight and received a cut on his hand. From Ruby's house, the appellant and Nelson returned to the Fireside Lounge between 1:00 a.m. and 2:00 a.m. He vaguely remembered talking with Holly but denied that he told her that he and Nelson had killed the other two men. He did not remember any conversation with Cowart. He remembered ordering a drink but remembered nothing else until he woke up at the police station the next morning.
The appellant denied ever having Evans' watch and emphatically denied any participation in the killing of Couey and Evans.
The appellant's testimony was somewhat inconsistent with several prosecution witnesses. The night clerk at the Taylor Motel saw the appellant and his companions return to the motel between 12:30 and 1:00 a.m. However, contrary to appellant's testimony, he testified that Evans' automobile, in which the group had arrived, was still in the motel parking lot when he made his 2:00 a.m. security check. This was consistent with Ruby Salva's testimony that the appellant and Nelson arrived at her house between 2:00 and 3:00 a.m. Ruby also testified that the appellant was not involved in Nelson's fight at her house.
On rebuttal Evans' son testified that the shoes removed from the appellant when he was arrested belonged to his father. Apparently, one of the pairs of blood spattered shoes later recovered from Evans' automobile belonged to the appellant.
Also on rebuttal the state introduced a prior statement that the appellant had given the authorities on the day of his arrest. This pre-trial statement, like appellant's testimony at trial, was exculpatory in nature, but it was inconsistent with his statements from the witness stand in one important respect. In the pre-trial statement the appellant stated that the victims did not return with Nelson and him to the motel. He stated that he, Nelson, Cowart, Holly Carter and possibly others returned to the motel to get "the girls" some stockings but that Couey and Evans remained at the Fireside Lounge. Couey and Evans were still at the Fireside Lounge when he returned. He did not remember much, if anything, after returning to the Fireside Lounge until he woke up at the police station. In the pre-trial statement he had no idea how he cut his hand, or how Couey and Evans were killed.
Appellant's constitutional challenge of the Alabama Supreme Court's holding in Beck v. State, 396 So.2d 645 (Ala. 1981), is the same argument that has been ruled meritless on numerous occasions. See, *Page 1334 Coulter v. State, 438 So.2d 336 (Ala.Cr.App. 1982), and cases therein cited.
The appellant claims that he was denied his right to a speedy trial. He contends that the 14 month delay between his arrest (July 27, 1980) and the day of the trial (September 28, 1981) was prejudicial to him because of the unnecessary incarceration, the undue anxiety of waiting for trial, and the effect on his ability to prepare for the trial.
The appellant filed the factual equivalent of a motion to dismiss for failure to grant a speedy trial on September 10, 1981, just eighteen days before trial. He contends that the trial court erred in denying this motion. We disagree.
Due to the nature of the state's case against the appellant, which was based primarily upon circumstantial evidence, and in comparing this 14 month delay to the delays in Byrd v. State,421 So.2d 1344 (Ala.Cr.App. 1982), Cofer v. State,440 So.2d 1116 (Ala.Cr.App. 1983), and Minnifield v. State, 439 So.2d 753
(Ala.Cr.App. 1983), we have concluded that the delay in this instance was not "presumptively prejudicial," and that the appellant was not denied his right to a speedy trial. See,Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101
(1972), and the standards adequately discussed therein.
Furthermore, the appellant was on parole for grand larceny at the time of his arrest for public drunkenness on the morning of the murders. A revocation of his parole would have, undoubtedly, justified his incarceration for part, if not all, of the period between July 27, 1980, and the day of the trial. Appellant's trial delay complaints were grounded upon the alleged hardships of incarceration, but he made no specific claims and presented no evidence of any actual prejudice caused by the delay. See, Scaloni v. State, 383 So.2d 586 (Ala.Cr.App. 1980).
Appellant's pre-trial statement was tape recorded and immediately transcribed from the tape recordings. At trial, pertinent portions of the written transcription of this pre-trial statement were admitted into evidence over objections by the appellant that such admissions violated the "best evidence rule." The appellant argues that this constituted reversible error, because the tape recording, and not the transcription, should have been presented to the jury.
We have thoroughly reviewed the portions of the record which relate to appellant's pre-trial statement and have concluded that, if there were any technical errors committed in admitting into evidence the statement or any portion thereof, such errors were not harmful to the appellant. A.R.A.P. 45.
Appellant's pre-trial statement was admitted through the testimony of Neil Hanley, the former assistant District Attorney for Mobile County who conducted the interrogation which led to the statement. Hanley, after the Miranda predicate had been established, testified that he conducted a question and answer session with the appellant in the early evening on July 27, 1980. The questions and answers were tape recorded and, immediately thereafter, the tape recordings were transcribed by a competent secretary. Hanley stated that he reviewed the written statement the next day and was certain that it was an accurate transcription of his interrogation of the appellant. Hanley was then permitted to read the statement to the jury, because he could not remember all of the questions and answers.
The appellant was, subsequently, recalled as a witness to explain certain discrepancies between his pre-trial statement and his previous testimony at trial. He pointed out that certain information was either left out of, or misstated in, his pretrial statement simply because at that time he could not clearly remember all the events that transpired on the night of the murders. He did not challenge the accuracy of any specific parts of the statement but did state that he did not remember his answers to certain questions. *Page 1335 
His final comment on the pre-trial statement was that he was not denying that the statement was voluntary or that it was substantially accurate.
Under these circumstances, especially in light of appellant's own verification of the voluntariness and accuracy of the statement, there is no reason to doubt the authenticity of the transcription, and the trial court will not be held in error for admitting it. Compare, Fleming v. State, 57 Ala. App. 556,329 So.2d 616 (1976); Beckham v. State, 389 So.2d 573
(Ala.Cr.App. 1980); and Swann v. State, 412 So.2d 1253
(Ala.Cr.App. 1982) (other properly predicated evidence of an accused's incriminating statements was admissible, even though a tape recording might have been more accurate).
Moreover, although it possibly created some doubts in the minds of the jury as to the credibility of certain portions of appellant's trial testimony (which was the prosecution's motive for presenting it), appellant's pre-trial statement was exculpatory in nature and consistent with his trial testimony emphatically denying any participation in the murders.
We are convinced that the jury's verdict would have been the same had the tape recording been admitted into evidence instead of, or in addition to, the written transcription of that recording. See, A.R.A.P. 45.
Appellant's argument that his conviction must not stand because no aggravating circumstance, required to elevate a murder to a capital murder, was alleged or proven is unfounded. The capital offense defined in § 13A-5-31 (a)(10), Code of Alabama 1975, was properly alleged in the indictment and was supported by the evidence. There is no merit in the argument that one of the "aggravating circumstances" enumerated in § 13A-5-35, Code of Alabama 1975, must be averred in the indictment. See, Dobard v. State, 435 So.2d 1338 (Ala.Cr.App. 1982), and cases cited therein.
The appellant further contends that the jury's verdict "is contrary to and not supported by the evidence," in that the state failed to prove that a first-degree murder was committed or that two or more people were killed by one or a series ofacts, or that the appellant was involved.
The first two alleged defects in the state's case have no basis in logic or fact. Appellant's defense was alibi. There was no evidence whatsoever to rebut the overwhelming evidence that Couey and Evans were both the victims of first-degree
murder and that they were killed by one or a series of acts.
As to the third alleged defect, our preceding summary of the evidence, including appellant's alibi testimony, demonstrates that, although the appellant denied any involvement in the murders, there was sufficient evidence to support the jury's verdict to the contrary.
Both Holly Carter and Jerry Cowart testified that the appellant admitted his involvement in the murders shortly after they were committed. Their testimonies were consistent with all of the overwhelming circumstantial evidence against the appellant.
The only evidence favorable to the appellant was his own alibi. Unfortunately, for the appellant, his alibi was not supported by any other evidence, direct or circumstantial. The jury was burdened with weighing the abundance of circumstantial evidence pointing to appellant's guilt against appellant's own uncorroborated alibi. The jury viewed the appellant, as well as all the witnesses against him, from the witness stand and was, therefore, capable of making an informed determination as to the weight and credibility of each testimony. The jury's verdict was supported by the evidence and will not be disturbed on this appeal.
For aught that appears in the record, this appellant received a fair trial and his substantial rights were adequately protected.
Appellant's capital murder conviction and subsequent sentence of life imprisonment without parole are, therefore, affirmed.
AFFIRMED.
All the Judges concur, except BOWEN, J., who concurs in the result only. *Page 1336