This appeal is from the retrial of Ted Allen McGinnis, Jr., for the capital murder of Florence Kahler, who was stabbed to death during the burglary of her home. The original trial, the appeal from which is reported as McGinnis v. State,382 So.2d 605 (Ala.Cr.App. 1979), cert. denied, 382 So.2d 609 (Ala. 1980), resulted in a conviction for the capital felony as charged, and a sentence of life imprisonment without parole. This original conviction was reversed on mandate of Beck v.Alabama, 447 U.S. 625, 100 S.Ct. 2383, 65 L.Ed.2d 392 (1980), on remand, 396 So.2d 645 (Ala. 1981), and Ritter v. State,403 So.2d 154 (Ala. 1981), and a new trial was ordered. McGinnis v.State, 403 So.2d 1 (Ala.Cr.App. 1981).
As a result of this second trial the appellant was again convicted of the capital felony "as charged" and sentenced to life imprisonment without parole.
It is from this second conviction and sentence that the appellant prosecutes this appeal. Facts pertinent to the issues raised on this appeal are contained either in the reported appeal from the first trial (see, McGinnis v. State,382 So.2d 605, supra), or within the respective discussions of the specific issues below.
 I
Appellant's constitutional challenge of the Alabama Supreme Court's holding in Beck v. State, 396 So.2d 645 (Ala. 1981), is, essentially, the same argument that has been ruled meritless on numerous occasions. Beech v. State, 439 So.2d 1331
(Ala.Cr.App. 1983); see, Coulter v. State, 438 So.2d 336
(Ala.Cr.App. 1982), and cases therein cited.
 II
After an appropriate hearing, the trial court ruled that state's witness Charles Terry Holloway, appellant's accomplice, was "unavailable" for this retrial and, therefore, permitted the state to introduce Holloway's testimony from appellant's original trial. The appellant contends that the trial court's rulings on this matter were reversible error because they were not supported by the state's evidence as to the missing witness's availability.
In Napier v. State, 377 So.2d 1135 (Ala.Cr.App.), cert. denied, 377 So.2d 1138 (Ala. 1979), we stated:
 "A sufficient predicate for a determination of unavailability is laid when the party offering the evidence shows that it exercised due diligence in seeking the presence of the witness at the trial to no avail. [Citations omitted].
". . . . *Page 1291 
 "The sufficiency of the proof of the predicate of unavailability of an absent witness is addressed to the sound discretion of the trial judge."
In support of his argument that the trial court abused its discretion, the appellant cites Bardin v. State, 143 Ala. 74,38 So. 833 (1905). The unavailability predicate, that the sheriff and his deputy could not find the witness in his county of residence, was found to be insufficient in Bardin because it indicated merely a "temporary" disappearance of the missing witness. Such is not the case before us.
Dave Barber, one of the prosecutors at the trial below, and Grover Sims, an investigator with the Jefferson County District Attorney's Office, testified as to the prosecution's efforts to locate Holloway for trial. Holloway's mother had given them Holloway's last known address and his place of employment. They made several attempts to serve Holloway at the addresses given them, the last attempt being made on the Thursday before trial, April 8, 1982. Several of his former co-employees at his last place of employment told them that Holloway had been gone for several months, and no one knew exactly where he had gone. His mother and his stepfather could give no additional information as to Holloway's whereabouts.
Holloway's parole officer at the time of his disappearance, Billy J. Cox, testified that he last saw and talked with Holloway on January 5, 1982. He verified the same addresses that the District Attorney's Office had noted as Holloway's last place of residence and employment. Cox's own investigation revealed that Holloway quit his job and had moved out of his residence on January 19, 1982. Holloway's mother had notified Cox on January 21, 1982, that she was worried that he might violate his parole because he had been accused of taking a television set. She was upset because Holloway had disappeared and she did not know where he was.
Because Cox was unable to locate him, Holloway was placed on "delinquent status" by the Board of Pardons and Paroles on February 16, 1982, and a warrant was issued for his arrest.
These facts, unlike those in Bardin, supra, are more than sufficient to justify the trial court's conclusion that Holloway was "unavailable" for trial. They indicate more than a mere "temporary" disappearance, and demonstrate "due diligence" on the part of the prosecution to locate Holloway, even though, as can always be argued, other steps might also have been taken.
A review of the evidence from the "unavailability" hearing in the instant case demonstrates that the trial court did not abuse its discretion in admitting Holloway's prior testimony. See, Napier v. State, supra, and cases therein cited; Alexanderv. State, 418 So.2d 973 (Ala.Cr.App. 1982).
 III
Appellant contends that inculpatory statements which he made to the authorities and which were later introduced at trial, were not voluntarily and intelligently made. His theory is that he had not been told before making the statements that he was going to be charged with a capital felony. This argument is without merit. Jemison v. State, 49 Ala. App. 389, 270 So.2d 836
(1972); Myers v. State, 401 So.2d 288 (Ala.Cr.App. 1981); Halev. State, 420 So.2d 821 (Ala.Cr.App. 1982).
The appellant admits that he had been told that he was suspected of killing Mrs. Kahler and that charges of murder and burglary might be involved. He also admits that, except for the failure to inform him of a possible capital felony charge, his statements were otherwise voluntarily and intelligently made.
Appellant's statements were properly admitted into evidence by the trial court.
 IV
Two hours after retiring to consider its verdict, the jury sent a message to the court inquiring about the possibility of returning "a verdict of guilty of murder one and burglary one with a sentence of life *Page 1292 with parole." The court brought the jury back and instructed them that "[p]arole or probation is not the concern of the jury." He then explained that, under the circumstances of the case, if the jury found the appellant guilty of the capital offense, the court would set the sentence and the sentence would be "life imprisonment without parole." He also reiterated his earlier instructions regarding the lesser included offenses of first-degree murder and first-degree burglary and the possible punishments for each.
The appellant argues on appeal that these supplemental instructions erroneously injected sentencing information into the guilt phase of the trial and, thereby, prejudiced the jury against him. The appellant contends that these instructions constituted reversible error because they encouraged the jury to return a verdict of guilty of the capital offense.
Appellant's objections to the trial court's supplemental instructions were not timely. Before the trial began the appellant agreed to have the court instruct the jury that the death penalty would not be appropriate in the instant case.[1]
Without objection the court instructed the jury venire, and later the empanelled jury, that the death penalty was not a possible punishment in the case before them. This was repeated in summation.
The appellant first objected to the court's supplemental instructions regarding punishment in his motion for a new trial. These objections in his motion for a new trial came too late to preserve the issue for our review. See, Hewitt v.State, 389 So.2d 157 (Ala.Cr.App. 1980); Harris v. State,412 So.2d 1278 (Ala.Cr.App. 1982); Coleman v. State, 420 So.2d 833
(Ala.Cr.App. 1982).
Where punishment instructions have been given during the guilt phase of a capital felony trial, they have been found to constitute harmless error, if indeed they constitute error at all. See, Brazell v. State, 423 So.2d 323 (Ala.Cr.App. 1982), and cases therein cited; see also, Crowe v. State,435 So.2d 1371 (Ala.Cr.App. 1983).
The jury had clear instructions on the lesser included offenses of first-degree murder and first-degree burglary, and, presumably, would have returned a verdict of guilty of one of these lesser offenses had the evidence so dictated.
For the foregoing reasons appellant's conviction and sentence are due to be, and are hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] The court and both counsel agreed, before the jury was struck, that Bullington v. Missouri, 451 U.S. 430,101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), mandated that death could not be a possible punishment in the instant case. In Bullington, the United States Supreme Court held that in a state with a bifurcated capital felony trial scheme, the Double Jeopardy Clause of the Fifth Amendment barred reconsideration of the death penalty in a retrial where the defendant was originally convicted of a capital felony but not sentenced to death. In the instant case, appellant's first trial resulted in a capital felony conviction but the trial court set sentence at life imprisonment without parole because the mitigating circumstances outweighed the aggravating circumstances. See,McGinnis v. State, 382 So.2d 605, supra.