TAYLOR, Presiding Judge.
The appellant, Andrew William Jones, was convicted of murder made capital because the murder occurred during the course of a robbery, see § 13A-5-40(a)(2), Code of Alabama 1975. He was sentenced to life imprisonment without parole.
The state’s evidence tended to show that the body of LaKiesha Dothard was found in her apartment on October 12, 1993. Dr. Robert Brissie, chief coroner and medical examiner for Jefferson County, testified that the victim died from loss of blood resulting from multiple stab wounds. The victim and her mother, Deborah Dothard, shared the apartment. Deborah Dothard testified that *966 when she left to go to work at approximately 6:30 p.m. on the evening prior to the murder, LaKiesha was watching television. When she returned the next morning she found her daughter’s body. A television and a backpack were missing from the apartment.
Albert Thompkms, the owner of a convenience store/laundromat across the street from the victim’s apartment building, testified that he saw the appellant standing in an alley behind his store around 7:30 p.m. on the night of the murder. Thompkms stated that he did not see the appellant in the area when he closed the store around 8:00 p.m. Calvin Reynolds, a friend of the appellant’s, testified that he had seen the appellant “pacing” in the alley during the night. Reynolds said that he had been at the apartment of a friend who lived near the victim’s apartment. Reynolds admitted that the friend’s apartment was a place where he and others met to “do drugs.”
Reynolds testified further that later that evening the appellant appeared at her friend’s apartment. Reynolds stated that the appellant told him that he was waiting for his girlfriend. The appellant had with him a 13” television, something that Reynolds identified as a camera or binoculars, jewelry, and a backpack. The appellant told Reynolds that he had just broken up with his girlfriend and that he had taken these items from her. The appellant asked Reynolds to help him sell them. Reynolds said that the appellant spent the night in a closet at the friend’s apartment. The following evening Reynolds discovered a hole in the sheetroek in the closet. Reynolds testified that he found a knife inside a sock, an identification card, and other things inside the hole. The knife and other items found in the closet were subsequently placed in a garbage can near the apartment building, where they were later discovered by the police.
Officer Evelyn Drake of the Birmingham Police Department testified that she discovered a brown wastebasket outside the apartment near a dumpster and that the wastebasket contained a tan purse, a black purse, a knife, and a nondriver’s identification card. Deborah Dothard stated that the tan purse and black purse belonged to her daughter. Ms. Dothard also identified a Social Security card, a Birmingham Board of Education name tag, and a library card that belonged to her daughter.
Larry Huys, a supervisor with the Department of Forensic Sciences, testified that the blood type of the bloodstain on the knife was consistent with a mixture of the appellant’s blood and the victim’s blood. He further testified that a bloodstain on the appellant’s shoe was consistent with the victim’s blood type and could not have come from the appellant. Also, head hair and pubic hair found on the victim’s nightshirt, which she was wearing when she was killed, were consistent with the appellant’s hair. Gerald Wayne Burrow, of the Department of Forensic Sciences, testified that shoe impressions in the ground outside the victim’s apartment matched the appellant’s shoes he was wearing when he was arrested. Also, Ms. Do-thard identified a ring found in the appellant’s suitcase, which was in his possession when he was arrested, as belonging to her daughter.
I
The appellant contends that the trial-court erred by failing to suppress certain items of evidence because, he says, the state failed to prove a sufficient chain of custody. In Ex parte Holton, 590 So.2d 918 (Ala.1991), the Alabama Supreme Court stated:
“This opinion sets forth an analysis to be followed in deciding whether a proper chain of custody has been shown. We have held that the State must establish a chain of custody without breaks in order to lay a sufficient predicate for admission of evidence. Ex parte Williams, 548 So.2d 518, 520 (Ala.1989). Proof of this unbroken chain of custody is required in order to establish sufficient identification of the item and continuity of possession, so as to assure the authenticity of the item. Id. In order to establish a proper chain, the State must show to a ‘reasonable probability that the object is in the same condition as, and not substantially different from, its condition at the commencement of the chain.’ McCray v. State, 548 So.2d 573, 576 (Ala.Cr.App.1988). Because the pro *967 ponent of the item of demonstrative evidence has the burden of showing this reasonable probability, we require that the proof be shown on the record with regard to the various elements discussed below.
“The chain of custody is composed of ‘links.’ A ‘link’ is anyone who handled the item. The State must identify each link from the time the item was seized. In order to show a proper chain of custody, the record must show each link and also the following with regard to each link’s possession of the item: ‘(1) [the] receipt of the item; (2) [the] ultimate disposition of the item, i.e., transfer, destruction, or retention; and (3) [the] safeguarding and handling of the item between receipt and disposition.’ Imwinkebied, The Identification of Original, Real Evidence, 61 Mil.L.Rev. 145, 159 (1973).
“If the State, or any other proponent of demonstrative evidence, fails to identify a link or fails to show for the record any one of the three criteria as to each link, the result is a ‘missing’ link, and the item is inadmissible. If, however, the State has shown each .link and has shown all three criteria as .to each link, but has done so with circumstantial evidence, as opposed to the direct testimony of the ‘link,’ as to one or more criteria or as to one or more links, the result is a ‘weak’ link. When the link is ‘weak,’ a question of credibility and weight is presented, not one of admissibility.”
Holton, 590 So.2d at 919-20.
In this case the appellant attacks the chain of custody of the knife, the victim’s nightshirt, and the blood and hair samples. The appellant contends that there are “missing” links in the chain of custody for each of these items. The record reflects that the state established a sufficient chain of custody. Officer Drake found the knife and sealed it in an evidence envelope. It was then taken to the evidence room at the Birmingham Police Department. Officer Rodney Lawley removed the sealed envelope containing the knife from the evidence room and transported it to the Department of Forensic Sciences on October 28, 1993. Larry Huys of the Department of Forensic Sciences testified that on October 28,1993, the department received, among other things, a wooden handled knife. Officer Lawley received the nightshirt in a sealed bag from the coroner and then transported it to the Department of Forensic Sciences. Huys testified that it received a blood-soaked nightgown on October 28, 1993. Exhibit 55, containing blood and hair samples, was placed in the evidence room by Officer Steven Thrash. These samples were also among the items received in a sealed bag by the Department of Forensic Sciences on October 28, 1993. There was a sufficient chain of custody established for these items. The court did not err in denying appellant’s motion to suppress.
II
The appellant next contends that the trial court erred by failing to suppress the evidence of the victim’s ring because, he says, that Evidence was obtained as a result of a statement made by the appellant after his arrest but before he was read his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The appellant was apprehended at a fire station shelter in Birmingham by Officer Johnny Long. Long approached the appellant and asked him to go with him to the police station for questioning. Officer Long placed him in handcuffs. Long asked the appellant if he had any personal belongings that he wished to bring with him. The appellant stated that he had a suitcase that he wanted to bring with him. The suitcase was placed in a bag and sealed and placed in the evidence room. The suitcase was later searched pursuant to a. search warrant and a ring belonging to the victim was discovered. This item of evidence was correctly received into evidence, because it was obtained as a result of a valid inventory search.
“A police inventory of some possession of the arrestee, such as a suitcase, presupposes that the police had some valid reason for taking custody of that object, for it is only because of such taking of custody that the police can be said to have some obligation to safeguard the contents. This presents no problem when a person is arrested in some public place while carry *968 ing a suitcase of like object, for it would be clearly improper for police to simply leave the container unattended at the scene of the arrest. As noted by Justice Blackmun in United States v. Chadwick [, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)]:
“ ‘A person arrested in a public place is likely to have various kinds of property with him: items inside his clothing, a briefcase or suitcase, packages or a vehicle. In such instances the police cannot very well leave the property on the sidewalk or street.... I think it is surely reasonable for the police to take the items along to the station with the arrested person.’
“Likewise, if a person is arrested in a public place and it is known that he will thereby be prevented from retrieving a suitcase belonging to him which is in the vicinity, perhaps checked aboard a soon-to-depart aircraft, it is again appropriate for the police to take custody of it.”
W. LaFave, 3 Search and Seizure, § 5.5(b), 180-181 (3d Ed.1996).
III
The appellant contends that the trial court erred by allegedly allowing the state to bolster the credibility of one of its witnesses. Specifically, the appellant contends that a comment by the state during its closing argument incorrectly bolstered the testimony of Wayne Burrows of the Department of Forensic Sciences. The appellant made no objection to the comment at trial; therefore, this issue is not preserved for review on appeal. Lee v. State, 562 So.2d 657, 666 (Ala.Cr.App.1989).
IV
The appellant next contends that the trial court allegedly erred by instructing the jury that they would participate in the sentencing phase of the trial. The trial court informed the jury at the start of the trial that there would be additional proceedings to determine punishment. When the jury returned with a question during deliberation concerning whether it would participate in the punishment proceedings, the court stated:
“Well, folks, as I told you earlier, ... if the defendant is convicted of capital murder, there would be additional proceedings where you would decide, following the guidelines that I give you, whether the defendant should be sentenced to death or life without parole.
“I again — I admonish you strongly at this point that your duty at this point and during this trial is to determine whether the state has proved beyond a reasonable doubt the guilt of the defendant of the capital offense or some lesser offense that I’ve charged you on. You should not concern yourself with punishment or sentence at this time.”
The trial court correctly instructed the jury not to consider punishment during the guilt phase of the trial. The appellant contends that the jury considered punishment during the guilt phase. The appellant has not presented any evidence to support that contention. Juries are presumed to follow the instructions of the trial court. Britain v. State, 518 So.2d 198 (Ala.Crim.App.1987), cert. denied, 486 U.S. 1008, 108 S.Ct. 1736, 100 L.Ed.2d 199 (1988). Further, this court has stated, “[W]here punishment instructions have been given during the guilt phase of a capital felony trial, they have been found to constitute harmless error, if indeed they constitute error at all.” McGinnis v. State, 443 So.2d 1289, 1292 (Ala.Cr.App.1983).
V
Last, the appellant contends that the trial court erred by denying the appellant’s request for funds to secure a psychiatrist and an expert to examine hair and blood samples, pursuant to Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In a pretrial motion, the appellant requested that the trial court appoint a private psychiatrist.
In Ex parte Dobyne, 672 So.2d 1354, 1357-58 (Ala.1995), the Alabama Supreme Court stated:
“In Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the United States Supreme Court held that an indigent defendant is entitled, under the Due Process Clause of the United *969 States Constitution, to expert psychiatric assistance when the defendant’s sanity is a significant issue. The Supreme Court expressed concern that the indigent defendant have access to a ‘competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.’ Ake, 470 U.S. at 83, 105 S.Ct. at 1096.
“However, in Dubose v. State, 662 So.2d 1189 (Ala.1995), this Court held that the Ake principles relating to assistance of experts are not limited to psychiatrists. The Ake principles, which are grounded in the due process guarantee of fundamental fairness, apply to assistance by nonpsychiatric experts when an indigent defendant makes a proper showing that the requested assistance is needed in order for the defendant to have ‘a fair opportunity to present his defense.’ Dubose, 662 So.2d at 1194. Specifically, a defendant, in order to be entitled to funds to pay for an expert, must show more than a mere possibility that he or she will receive useful assistance from the expert. Rather, the defendant must show a reasonable probability that the expert would aid in the defense and that the denial of an expert to assist at trial would result in a fundamentally unfair trial. In the past, Alabama decisions have been based upon whether the defendant made an adequate showing of a need for the requested expert. Dubose, 662 So.2d at 1191; see also, Smith v. State, 623 So.2d 369 (Ala.CrApp.1992), cert. denied, 510 U.S. 1030, 114 S.Ct. 650, 126 L.Ed.2d 607 (1993); McLeod v. State, 581 So.2d 1144 (Ala.Cr.App.1990); Siebert v. State, 562 So.2d 586 (Ala.Cr.App.1989), aff'd, 562 So.2d 600 (Ala.), cert. denied, 498 U.S. 963, 111 S.Ct. 398, 112 L.Ed.2d 408 (1990); Stewart v. State, 562 So.2d 1365 (Ala.Cr.App.1989); McGahee v. State, 554 So.2d 454 (Ala.Cr.App.), aff'd, 554 So.2d 473 (Ala.1989).”
Here, the appellant did not show that a private psychiatrist would aid in his defense. The appellant did not present any evidence of past mental problems. The court granted a psychological examination by a state psychiatrist. The state-provided mental health examination revealed that the appellant was competent. Further, the appellant did not show that the denial of the expert would result in a fundamentally unfair trial. The trial court did not err by denying the motion for funds to hire a private psychiatrist.
The appellant did not request an expert to examine hair and blood samples in his pretrial motion. The record reflects that during a pre-trial hearing the appellant’s counsel informed the court that he was having trouble understanding some of the forensic test results. The court instructed the appellant to contact the Department of Forensic Sciences for help. The record reflects that the appellant did not make a motion for the appointment of an expert to examine the tests regarding the hair and blood samples or the shoe impressions. “To preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof.... An issue raised for the first time on appeal is not correctly before this court.” Buice v. State, 574 So.2d 55, 57 (Ala.Cr.App.1990). This issue is not before this court because the appellant did not preserve this issue for review on appeal.
For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.